# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMACIA CORPORATION N/K/A PFIZER INC., <br><br>       Plaintiff, <br><br>v. <br><br>ARCH SPECIALTY INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, and LIBERTY MUTUAL INSURANCE COMPANY, <br><br>       Defendants. | Civil Action No. _____ <br><br><br><br><br><br>**COMPLAINT** <br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pharmacia Corporation ("Pharmacia") n/k/a Pfizer Inc. ("Pfizer"), with a principal place of business at 235 East 42nd Street, New York, NY 10017, by and through its undersigned counsel, for its Complaint against Defendants Arch Specialty Insurance Company ("Arch"), with a principal place of business at 300 Plaza Three, Jersey City, NJ 07311, Twin City Fire Insurance Company ("Twin City"), with a principal place of business at 1 Hartford Plaza, Hartford, CT 06115, and Liberty Mutual Insurance Company ("Liberty"), with a principal place of business at 175 Berkeley Street, Boston, MA 02116 (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.  This is an action for damages for breach of contract and/or anticipatory breach of contract, as well as for declaratory relief, arising out of Defendants' repudiation and breach of obligations under their excess directors' and officers' ("D&O") insurance policies (the "Policies") issued to Pharmacia, which was later acquired by Pfizer. The Policies obligate Defendants to pay for the costs incurred by Pfizer, on behalf of Pharmacia, in defending against

and settling a lawsuit captioned *Robert L. Garber v. Pharmacia Corp., et al.*, No. 03-1519 (AET) (D.N.J.), later consolidated and captioned *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*, No. 03-1519 (AET) (D.N.J.) (the "Garber Action").

2. The Garber Action was brought on or about April 7, 2003 against Pharmacia and certain of its directors and officers by a class of Pharmacia shareholders. The lawsuit generally alleged that underlying defendants had made false and misleading statements, in violation of federal securities laws, about the gastrointestinal ("GI") health safety advantage that Pharmacia-manufactured arthritis drug Celebrex had over competitor drugs.

3. After almost a decade of litigation, on January 30, 2013, the court granted final approval of a $164 million settlement of the Garber Action.

4. Collectively, certain of Pharmacia's insurers (not Defendants) have paid at least $130 million to reimburse Pfizer's defense costs (totaling tens of millions of dollars) and a portion of the settlement, leaving $67 million unreimbursed. In this action, Pfizer seeks, *inter alia*, to have Defendants honor their contractual obligations and pay the $30 million in limits under their Policies in partial reimbursement of this sum.

5. In direct violation of the terms of the Policies, Defendants have impermissibly denied coverage for and have refused to pay the costs Pfizer has incurred in settling the Garber Action.

6. Pfizer seeks damages for Defendants' breach of contract and/or anticipatory breach of contract for refusing to comply with their coverage obligations owed under the Policies and a declaration as to the existence, scope, and breach of Defendants' obligations to pay indemnity expenses arising from the Garber Action.

## THE PARTIES

7. Plaintiff Pfizer is among the world's largest pharmaceutical companies and develops and produces medicines and vaccines for a wide range of medical disciplines. Pfizer is a Delaware corporation with its principal place of business in New York. Pfizer is the successor to Pharmacia, a pharmaceutical company which it acquired in April 2003.

8. Upon information and belief, Defendant Arch is a Missouri corporation with its principal place of business in New Jersey. Upon information and belief, Arch is authorized to sell or write insurance in New Jersey and, at all material times, has conducted and continues to conduct substantial insurance business in New Jersey.

9. Upon information and belief, Defendant Twin City is an Indiana corporation with its principal place of business in Connecticut. Upon information and belief, Twin City is authorized to sell or write insurance in New Jersey and, at all material times, has conducted and continues to conduct substantial insurance business in New Jersey.

10. Upon information and belief, Defendant Liberty is a Massachusetts corporation with its principal place of business in Massachusetts. Upon information and belief, Liberty is authorized to sell or write insurance in New Jersey and, at all material times, has conducted and continues to conduct substantial insurance business in New Jersey.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

12.     Pfizer was founded more than 150 years ago and has grown to be one of the largest pharmaceutical companies in the world, selling products in more than 125 countries. Pfizer is engaged in the discovery, development, and manufacture of healthcare products, including medicines and vaccines, as well as consumer healthcare products.  Key Pfizer pharmaceutical products include Lyrica, Viagra, Chantix, Xeljanz, Sutent, Eliquis, Ibrance, Inlyta, Prevnar 13, Eucrisa, Xtandi, and Xalkori.  Key Pfizer consumer healthcare products include Advil, ChapStick, Centrum, and Robitussin.

13.     In 2002 and into 2003, Pharmacia was a Delaware corporation with its principal place of business at 100 Route 206 North, Peapack, NJ 07977.  That is stated in its Form 10-K dated December 31, 2002.

14.     Pfizer acquired Pharmacia on April 16, 2003.

15.     On November 30, 2012, Pharmacia was converted to a Delaware LLC named Pharmacia LLC.

**I.      THE INSURANCE POLICIES**

16.     As part of its risk management efforts, Pharmacia annually purchased insurance, including D&O insurance, which was intended to insure Pharmacia and its directors and officers for third-party claims alleging wrongful conduct on the part of Pharmacia's directors and officers.

17.     Pharmacia's D&O insurance coverage tower in effect from September 1, 2002 to September 1, 2003 provides $200 million in coverage in 12 layers of insurance excess of a $10 million self-insured retention.

18. With certain exceptions, all excess policies within the 2002-2003 coverage tower "follow form" to the policy issued by the primary insurer, National Union Fire Insurance Co. of Pittsburgh, Pa. (the "National Union Policy," attached hereto as Exhibit A). "Follow form" means that, aside from attachment points and limits of liability, the excess policies incorporate and adopt the terms, conditions, definitions and exclusions of the National Union Policy.

19. The National Union Policy and, thus, all policies which follow form to its terms, provides that insurance "shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the [acquisition]." The Garber Action was filed on or about April 7, 2003, prior to Pfizer's acquisition of Pharmacia on April 16, 2003, and thus falls within the coverage period covered by those policies.

20. National Union paid $25 million in connection with the Garber Action after exhaustion of the $10 million retention. Because the National Union Policy's limits are $25 million, Pfizer does not seek relief in this action against National Union.

21. The excess insurers whose policies provide the next six layers of coverage in excess of the National Union Policy limit, through the sixth-layer excess policy sold by Allied World Assurance Company Ltd. ("AWAC"), have likewise paid their full limits to Pfizer in connection with the Garber Action, for a total of an additional $105 million. Accordingly, Pfizer also does not seek relief in this action against those insurers.

22. Defendants have failed to pay or have disputed their obligations to pay any amounts in connection with the Garber Action under the following Policies:

(a) seventh-layer excess Policy No. 12DOX0520500, issued by Arch (the "Arch Policy," attached hereto as Exhibit B), with limits of $10 million excess of $130 million;

(b) eighth-layer excess Policy No. DA0211966-02, issued by Twin City (the "Twin City Policy," attached hereto as Exhibit C), with limits of $10 million excess of $140 million; and

(c) ninth-layer excess policy No. 078498-012, issued by Liberty (the "Liberty Policy," attached hereto as Exhibit D), with limits of $10 million excess of $150 million.[1]

### A. The National Union Policy

23. The National Union Policy provides coverage to Pfizer for both: 1) its own Loss[2] arising from a Securities Claim made against Pharmacia for any Wrongful Act of Pharmacia; and 2) its Loss arising from indemnifying an Insured Person, including a director or officer, for a Claim made against the Insured Person for any Wrongful Act of such Insured Person.

24. Under the National Union Policy, "Claim" includes, *inter alia*, a civil proceeding for monetary relief, "Securities Claim" includes a lawsuit alleging violation of any federal statute regulating securities, "Loss" is defined to include "damages, settlements, judgments . . . [and] Defense Costs," and "Wrongful Act" means "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act[.]"

25. The National Union Policy contains a provision that requires that the parties engage in non-binding mediation or arbitration of all coverage disputes before litigation can be commenced (the "Alternative Dispute Resolution Provision"). If mediation is selected, then the Alternative Dispute Resolution Provision requires that a party wait 120 days after the termination of the mediation before beginning a judicial proceeding.

---

[1] The next layer excess policy, sold by Arch Reinsurance Ltd., contains a mandatory arbitration clause.
[2] Capitalized terms are defined in the Policies.

26. The National Union Policy contains one exclusion that all Defendants have identified as one of the bases on which they refuse to pay Pfizer's claim. Exclusion 4(d) excludes coverage for Loss in connection with Claims made against an Insured "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time" (the "Related Wrongful Acts Exclusion").

### B. Defendants' Policies

27. In addition to following form to the National Union Policy, the Arch, Twin City, and Liberty Policies contain additional provisions that have been raised in this dispute.

28. Each of these Policies contains an exclusion that is similarly worded to the Related Wrongful Acts Exclusion in the National Union Policy.

29. The Arch, Twin City, and Liberty Policies each contains language stating that coverage only attaches after the underlying layer of insurance has been fully exhausted.

### C. The August 2002 Letter

30. The Arch, Twin City, and Liberty Policies (along with the sixth-layer excess policy issued by AWAC) were issued after Fred Hassan, Pharmacia's former CEO, and Chris Coughlin, Pharmacia's former CFO, executed a letter dated August 29, 2002 (the "August 2002 Letter"), which disclaimed prior knowledge of facts that may give rise to a claim. The letter stated:

> Directors & Officers Liability Policy
>
> No person for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance that may give rise to a claim that may fall within the scope of the proposed insurance.

> It is agreed that any claim based upon, arising from, or in any way related to any act, error, omission, fact or circumstance of which any such person has any knowledge or information will be excluded from coverage under the proposed insurance.

## II.      THE GARBER ACTION

31.     On or about April 7, 2003, lead plaintiff Robert L. Garber filed a putative class action lawsuit against Pharmacia and certain of its directors and officers, alleging violations of federal securities laws.  The case was later consolidated with a similar action filed by the Alaska Electrical Pension Fund and others.

32.     According to the Consolidated Complaint in the Garber Action (attached hereto as Exhibit E), underlying defendants had made false and misleading statements to class plaintiffs, people who purchased Pharmacia securities during the purported class period of April 17, 2000 to May 31, 2002.  Underlying plaintiffs alleged two causes of action:  violation of Sections 10(b) (securities fraud) and 20(a) (fraud by control person) of the Securities and Exchange Act of 1934.

33.     The Garber Action involved the results of a Pharmacia-commissioned clinical trial of Celebrex known as the Celecoxib Long-term Arthritis Safety Study ("CLASS Study").  Specifically, the underlying plaintiffs alleged that the underlying defendants had made false and misleading statements about Celebrex's GI safety advantage over other non-steroidal, anti-inflammatory drugs, such as diclofenac and ibuprofen.

34.     The underlying plaintiffs alleged that the underlying defendants' false and misleading statements regarding the GI benefits of Celebrex resulted in an artificially inflated share price for Pharmacia's stock, which suffered a significant drop once revelations about the CLASS Study became known to the investing public.

35.  Pfizer, on behalf of Pharmacia, defended against the Garber Action for almost a decade, incurring tens of millions of dollars in defense costs.

36.  On October 5, 2012, a Stipulation of Settlement was filed in the Garber Action, and on January 30, 2013, the court granted final approval of the $164 million settlement. By the time of the settlement, Pfizer's losses totaled approximately $207 million in defense and indemnity costs.

### III.  DEFENDANTS' REFUSALS TO COVER THE GARBER ACTION

37.  Pfizer timely notified all of Pharmacia's 2002-2003 coverage tower insurers of the Garber Action on behalf of Pharmacia.

38.  All eight insurers whose policies underlie the upper-level excess Policies sold by the Defendants have paid Pfizer the full amounts of their policies' limits in connection with the Garber Action.

39.  Defendants, however, have all denied coverage for the Garber Action based on three equally meritless defenses.

40.  First, Defendants assert that coverage for the Garber Action under the Policies is barred by the Related Wrongful Acts Exclusion and similar endorsements in their excess Policies because the Garber Action is allegedly related to three prior lawsuits: *Cain v. Merck & Co., et al.*, No. 1:01-CV-03441 (E.D.N.Y. filed May 29, 2000, S. Johnson, J.) ("*Cain*"); *Leonard v. Pharmacia Corp., et al.*, No. 3:01-CV-04104 (D.N.J. filed Aug. 27, 2001, G. Brown, J.) ("*Leonard*"); and *Astin v. Pharmacia Corp., et al.*, No. L-1322-01 (N.J. Super. Ct., Law Div. filed Aug. 27, 2001) ("*Astin*").

41.  However, *Cain*, *Leonard*, and *Astin* are consumer class actions brought on behalf of individuals who allegedly took Celebrex and/or Vioxx and claimed to have suffered physical

injuries from a defective product.  They are therefore unrelated as a matter of law to the Garber Action, a securities fraud action brought by shareholders who purchased stock and claim to have suffered financial injury as a result of deficient or defective financial or business disclosures.

42.     Second, Defendants assert that they do not owe coverage for the Garber Action because the policies underlying the Arch, Twin City, and Liberty Policies may not have been fully exhausted.

43.     However, all policies underlying the Arch, Twin City, and Liberty Policies have been exhausted by full payment of policy limits.  Defendants' payment obligations have thus been triggered by actual payment and exhaustion.

44.     Third, Defendants assert that the August 2002 Letter acts as an exclusion to coverage because certain individuals at Pharmacia supposedly had "knowledge or information of any act, error, omission, fact or circumstance that may give rise to" the Garber Action.

45.     However, the August 2002 Letter is not part of the Policies and therefore may not alter their terms.  In any event, it is inapplicable here because the statements made in the Letter are and were at the time true, as confirmed by the fact that AWAC, which also received the August 2002 Letter prior to issuing coverage, has already paid its full policy limits in connection with the Garber Action.

46.     Alternatively, Defendants' position is the functional equivalent of material non-disclosure, for which the only appropriate remedy is rescission, which Defendants have failed to perfect in that they have not returned any premiums paid for the Policies.

47.     In light of the parties' continued disagreement, and in light of the National Union Policy's Alternative Dispute Resolution Provision, Pfizer demanded mediation in an attempt to

resolve this dispute.

48.     The mediation did not resolve the parties' dispute.  120 days have passed since Pfizer terminated the unsuccessful mediation, allowing Pfizer to bring the present action pursuant to the Alternative Dispute Resolution Provision.

49.     To date, Defendants have not paid a single penny towards Pfizer's defense and settlement costs incurred with regard to the Garber Action.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

50.     Pfizer repeats and realleges the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     Pursuant to the terms of their Policies, Defendants are obligated, upon attachment, to pay Pfizer's losses, including 100% of the as-yet unreimbursed costs of the settlement, incurred in connection with the Garber Action, up to the limits of their Policies.

52.     Defendants have breached their obligations under the Policies by failing and refusing to pay such losses.

53.     Pfizer has complied with all terms, conditions and prerequisites to coverage set forth in the Policies, including exhaustion of the self-insured retention and exhaustion of all underlying insurance.

54.     As a result of the Defendants' breach, Pfizer has suffered damages in the amount of $30 million, before prejudgment interest.

### SECOND CAUSE OF ACTION, IN THE ALTERNATIVE
### (ANTICIPATORY BREACH OF CONTRACT
### AGAINST TWIN CITY AND LIBERTY)

55.     Pfizer repeats and realleges the allegations set forth in paragraphs 1 through 54 of

this Complaint as if fully set forth herein.

56. Pursuant to the terms of their Policies, Twin City and Liberty are obligated, upon attachment of their Policy layers, to pay Pfizer's losses, including 100% of the as-yet unreimbursed costs of the settlement, incurred in connection with the Garber Action, up to the limits of their Policies.

57. Twin City and Liberty's obligations of good faith and fair dealing do not allow Twin City and Liberty to deny their coverage obligations simply because an underlying carrier Defendant, Arch, has wrongly denied coverage.

58. To the extent the Garber Action is covered under their Policies, Twin City and Liberty have anticipatorily repudiated their obligations to pay such losses under their Policies, in that they have unequivocally demonstrated that they will not make any payment toward the Garber Action, even upon exhaustion by payment of all limits underlying their Policies.

59. Pfizer has complied with all terms, conditions and prerequisites to coverage set forth in the Twin City and Liberty Policies, and Pfizer remains ready to perform all of its obligations under the Policies.

60. As a result of Twin City's and Liberty's anticipatory breach of their obligations under their Policies, Pfizer has suffered damages in the amount of $20 million before prejudgment interest.

**THIRD CAUSE OF ACTION**
**(DECLARATORY RELIEF AGAINST ALL DEFENDANTS)**

61. Pfizer repeats and realleges the allegations set forth in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. Pursuant to the terms of their Policies, each Defendant is obligated, upon

attachment of its Policy, to pay Pfizer's losses, including 100% of the as-yet unreimbursed costs of the settlement incurred in connection with the Garber Action.

63. Upon information and belief, Defendants dispute their legal obligations to pay such losses.

64. Pfizer is entitled to a declaration by this Court of the Defendants' obligations under the Policies with regard to the Garber Action.

65. An actual controversy of a justiciable nature presently exists between Pfizer and the Defendants concerning the proper construction of the Policies, and the rights and obligations of the parties thereto with respect to losses incurred in connection with the Garber Action.

66. The issuance of declaratory relief by this Court will terminate the existing controversy among the parties.

67. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Pfizer and against Defendants, declaring that Defendants are obligated to pay all losses incurred in connection with the Garber Action, subject to the applicable attachment points and limits of the Policies.

## PRAYER FOR RELIEF

**WHEREFORE**, Pfizer prays for relief as follows:

i. On the first cause of action, Pfizer requests that the Court enter judgment against all Defendants, awarding Pfizer compensatory and consequential damages in an amount to be determined in this action;

ii. On the second cause of action, in the alternative, Pfizer requests that the Court enter judgment against Defendants Twin City and Liberty, awarding Pfizer compensatory and

consequential damages in an amount to be determined in this action;

  iii.  On the third cause of action, Pfizer requests that this Court enter a declaratory judgment in favor of Pfizer and against all Defendants, declaring that each such Defendant is obligated to pay Pfizer, upon attachment and up to the applicable liability limit, for any as-yet unreimbursed losses incurred in connection with the Garber Action;

  iv.  On all causes of action, Pfizer requests that the Court award Pfizer all costs incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees, as well as prejudgment and post-judgment interest; and

  v.  Additionally, Pfizer requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Demand for Trial by Jury is hereby made on all matters so triable.

Dated: New York, New York.
January 12, 2018

MCKOOL SMITH, P.C.

By: s/ Robin L. Cohen
Robin L. Cohen (NJ Attorney ID No. 030501986)
Adam Ziffer (*pro hac vice* application pending)
Marc T. Ladd (*pro hac vice* application pending)
Denise N. Yasinow (NJ Attorney ID No. 148032015)

One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400

*Attorneys for Plaintiff Pharmacia Corporation n/k/a Pfizer Inc.*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

      Pursuant to Local Civil Rule 11.2, I certify under penalty of perjury that the matter in controversy alleged in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: New York, New York.
January 12, 2018

By: s/ Robin L. Cohen
Robin L. Cohen (NJ Attorney ID No. 030501986)

One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400