# EXHIBIT A

# **AIG** AMERICAN INTERNATIONAL COMPANIES®

| | |
|---|---|
| ⌐ Insurance Company | ☐ Granite State Insurance Company |
| ☐ American Home Assurance Company | ☐ Illinois National Insurance Company |
| ☐ American International Pacific Insurance Company | ☒ National Union Fire Insurance Co. of Pittsburgh, Pa.® |
| ☐ American International South Insurance Company | ☐ National Union Fire Insurance Company of Louisiana |
| ☐ Birmingham Fire Insurance Company of Pennsylvania | ☐ New Hampshire Insurance Company |

(each of the above being a capital stock company)

POLICY #: *569-66-78*

RENEWAL OF: *486-21-88*

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 THE POLICY.**

### DECLARATIONS

*extra Copy*
*Drop in*
*file*

| ITEMS | | |
|---|---|---|
| 1. | **NAMED ENTITY:** (herein "**Named Entity**") | *PHARMACIA CORP* |
| 1(a) | MAILING ADDRESS: | *100 Route 206 North Peapack, NJ 07977* |
| 1(b) | STATE OF INCORPORATION/FORMATION: *Delaware* | |
| 2. | **POLICY PERIOD:** From: *September 1, 2002*  To: *September 1, 2003* 12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3. | **POLICY AGGREGATE LIMIT OF LIABILITY** (herein "**Limit of Liability**") For all **Loss**, in the aggregate, under this policy including Defense Costs: | *$25,000,000* |
| 4. | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain Defense Costs – (See Clause 6 for details.) | |
| 4(a) | **Securities Claims:** *$10,000,000* | 4(b) **Employment Practices Claims:** *$10,000,000* |
| 4(c) | All other **Claims:** *$10,000,000* | |

*303975*

75010 (2/00)                                                    1

| ITEMS (continued) | | | |
|---|---|---|---|

**5.** **CONTINUITY DATE (herein "Continuity Date")**

**a)** Coverages A and B, other than
**Outside Entity Executive**
coverage:  *March 31, 2000*

**5(b)** **Outside Entity Executive** coverage, including Coverage C: The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity**

**5(c)** Coverage D:  *March 31, 2000*

---

**6** **PREMIUM:**  *$2,100,000  +*      *$6,993 Surcharge*

---

**7** **CRISISFUND**<sup>SM</sup> limit:

**7(a)** **Crisis Loss:** *$0*

Additional **CRISISFUND**<sup>SM</sup>
**7(b)** for **Delisting Crisis Loss:** *$0*

---

**8** **NAME AND**
**ADDRESS OF INSURER** (herein "Insurer"):
*National Union Fire Insurance Company of Pittsburgh, Pa.*
*175 Water Street*
*New York, NY 10038*

This policy is issued only by the insurance company indicated in this Item 8.

*303975*

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

*Elizabeth M. Tuck*
_____
SECRETARY

*[signature]*
_____
PRESIDENT

*[signature]*
_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

*AON GROUP*
*685 THIRD AVENUE*
*NEW YORK, NY 10017*

*303975*

75010 (2/00)

# EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability*. This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

### COVERAGE D: CRISISFUND$^{SM}$ INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund**$^{SM}$, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

## 2. DEFINITIONS

(a) **"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

    (1) a written demand for monetary, non–monetary or injunctive relief;

    (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non–monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

    (3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

        (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

        (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund** $^{SM}$ " means:

    (1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

    (2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co–worker or subordinate position or otherwise, including any full–time, part–time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation**.

(i) "**Employment Practices Violation**" means any actual or alleged:

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, **"Employment Practices Violation"** shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) **"Executive"** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**

(k) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(l) **"Foreign Policy"** means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **"Foreign Policy"** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

(m) **"Indemnifiable Loss"** means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n) "**Insured**" means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) "**Insured Person**" means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive**:

(p) "**Loss**" means damages, settlements, judgments (including pre/post–judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, " **Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(C) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd–2(g)(2)(C); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non–Indemnifiable Loss** in connection therewith.

(q) "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by–laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) "**No Liability**" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) "**Non–Indemnifiable Loss**" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(t) "Organization" means:

   (1) the Named Entity;

   (2) each Subsidiary; and

   (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(u) "Outside Entity" means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy.

(v) "Outside Entity Executive" means any: (1) Executive of an Organization who is or was acting at the specific written request or direction of an Organization as an Executive of an Outside Entity; or (2) any other person listed as an Outside Entity Executive in an endorsement attached to this policy.

(w) "Policy Period" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) "Pollutants" means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) "Securities Claim" means a Claim, other than an administrative or regulatory proceeding against, or investigation of an Organization, made against any Insured:

   (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

      (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or

      (b) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization; or

   (2) brought derivatively on the behalf of an Organization by a security holder of such Organization.

Notwithstanding the foregoing, the term "Securities Claim" shall include an administrative or regulatory proceeding against an Organization, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person.

(z) "Subsidiary" means: (1) any for-profit entity that is not formed as a partnership of which the Named Entity has Management Control ("Controlled Entity") on or before the inception of the Policy Period either directly or indirectly through one or more other Controlled Entities; and (2) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an Organization.

(aa) "Wrongful Act" means:

   (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged Employment Practices Violation:

*AMENDED BY END. 5 (4.)*

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

   (1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

   (2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

   (3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

   (4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

   (5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive of the Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

**5.   LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)**

The **Limit of Liability** stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund** SM shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund** SM. The **CrisisFund** SM shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.*

**RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i) Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii) Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1) the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

8. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The **Insurer** does not, however, under this policy, assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the **Insurer**.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organization** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

75011 (2/00)                                        11

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring ᐧior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, " **Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

**12. ORGANIZATIONAL CHANGES**

(a) If during the **Policy Period**:

    (1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "Transaction"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

    (1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

    (2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "Auto-Subsidiary Period");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives:* Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An Organization ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

## 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("ADR") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, n which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

### ALASKA

DAVIS WRIGHT TREMAINE
701 W. Eighth Avenue, Suite 800,
Anchorage, AK 99501-3468
Tel: (907) 257-5300
Contact: David W. Oesting

FOSTER PEPPER & SHEFELMAN
1007 W. Third Ave., Ste. 100,
Anchorage, AK 99501
Tel: (907) 222-7100
Contact: Peter S. Erlichman / Tim Filer

### CALIFORNIA

BINGHAM MCCUTCHEN LLP
1900 University Avenue,
East Palo Alto, CA 94303-1212
Tel: (650) 849-4914
Contact: Mary T. Huser

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393-2626
Contact: Karen L. Kennard / Stephen
O. Hibbard

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400,
Los Angeles, CA 90071-1560
Tel: (213) 680-6416
Contact: John C. Morrissey

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393-2170
Contact: David M. Balabanian

BROBECK, PHLEGER & HARRISON LLP
One Market, Spear St. Tower,
San Francisco, CA 94105
Tel: (415) 442-0900
Contact: Meredith N. Landy / David M.
Furbush

BROBECK, PHLEGER & HARRISON LLP
Two Embarcadero Place, 2200 Geng Road
Palo Alto, CA 94303
Tel: (650) 424-0160
Contact: David M. Furbush / Meredith N.
Landy

BROBECK, PHLEGER & HARRISON LLP
550 South Hope Street,
Los Angeles, CA 90071
Tel: (213) 489-4060
Contact: Howard M. Privette

BROBECK, PHLEGER & HARRISON LLP
12390 El Camino Real,
San Diego, CA 92130
Tel: (858) 720-2500
Contact: Christopher H. McGrath /
William F. Sullivan

CLIFFORD CHANCE US LLP
One Market Steuart Tower, Suite 400,
San Francisco, CA 94105
Tel: (415) 778-4700
Contact: Tower C. Snow / Michael D. Torpey

CLIFFORD CHANCE US LLP
601 South Figueroa Street,
Los Angeles, CA 90017
Tel: (213) 312-9400
Contact: Daniel J. Tyukody

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2073
Contact: Paul A. Renne

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2092
Contact: Benjamin K. Riley

COOLEY GODWARD, LLP
4401 Eastgate Mall,
San Diego, CA 92121-1909
Tel: (858) 550-6050
Contact: William E. Grauer

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5182
Contact: Stephen C. Neal

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5037
Contact: William S. Freeman

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

DAVIS WRIGHT TREMAINE
2 Embarcadero Center, Suite 600,
San Francisco, CA 94111-3834
Tel: (415) 276-6500
Contact: Martin Fineman

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue,
Los Angeles, CA 90071-3197
Tel: (213) 229-7543
Contact: Phillip L. Bosl

GIBSON, DUNN & CRUTCHER LLP
1530 Page Mill Road,
Palo Alto, CA 94304
Tel: (650) 849-5300
Contact: John C. Dickey

GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza,
Irvine, CA 92614-8557
Tel: (949) 451-4108
Contact: Wayne W. Smith

IRELL & MANELLA LLP
1800 Ave. of the Stars, Suite 900,
Los Angeles, CA 90067
Tel: (310) 277-1010
Contact: David Schwartz / David Gindler /
David Siegel / James F. Elliot / Jim Adler /
Richard H. Borow

MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, CA 94105
Tel: (415) 268-7000
Contact: Melvin R. Goldman / Paul T.
Friedman

MORRISON & FOERSTER LLP
555 West 5th Street, Suite 3500,
Los Angeles, CA 90013
Tel: (213) 892-5200
Contact: B. Scott Silverman / Robert S.
Stern

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9264
Contact: Dennis L. Kinnaird

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9152
Contact: John W. Spiegel

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9153
Contact: George M. Garvey

O'MELVENY & MYERS LLP
400 South Hope St., 15th Floor,
Los Angeles, CA 90071
Tel: (213) 430-6000
Contact: Robert Vanderet / Seth Aronson

O'MELVENY & MYERS LLP
610 Newport Center, 17th Floor,
Newport Beach, CA 92660
Tel: (949) 760-9600
Contact: Brett J. Williamson / Michael G.
Yoder / Phillip Kaplan

O'MELVENY & MYERS LLP
275 Battery Street,
San Francisco, CA 94111
Tel: (415) 984-8700
Contact: Daniel Bookin / Richard Warmer

ORRICK HERRINGTON & SUTCLIFFE LLP
Old Federal Reserve Bank Building,
400 Sansome Street,
San Francisco, CA 94111
Tel: (415) 773-5469
Contact: John H. Kanberg

ORRICK HERRINGTON & SUTCLIFFE LLP
Old Federal Reserve Bank Building,
400 Sansome Street,
San Francisco, CA 94111
Tel: (415) 773-5944
Contact: William F. Alderman

ORRICK HERRINGTON & SUTCLIFFE LLP
1020 Marsh Road,
Menlo Park, CA 94025
Tel: (650) 614-7440
Contact: W. Reece Bader

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 S. Flower Street, Twenty-Third Floor,
Los Angeles, CA 90071-2371
Tel: (213) 683-6000
Contact: J. Allen Maines

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

PILLSBURY WINTHROP LLP
 :ific Bell Building, 101 W. Broadway,
 Suite 1800,
San Diego, CA 92101-8219
Tel: (619) 234-5000
Contact: Richard M. Segal

PILLSBURY WINTHROP LLP
2550 Hanover Street,
Palo Alto, CA 94304-1115
Tel: (650) 233-4500
Contact: Walter J. Robinson

PILLSBURY WINTHROP LLP
725 South Figueroa Street, Suite 2800,
Los Angeles, CA 90017-5443
Tel: (213) 488-7100
Contact: Kenneth R. Chiate

PILLSBURY WINTHROP LLP
50 Fremont Street,
San Francisco, CA 94105-2228
Tel: (415) 983-1000
Contact: Bruce A. Ericson / William O.
Fisher

IMPSON THACHER & BARTLETT
 J373 Hillview Avenue,
Palo Alto, CA 94304
Tel: (650) 251-5000
Contact: Charles E. Koob / George M.
Newcombe / James G. Kreissman

SIMPSON THACHER & BARTLETT
10 Universal City Plaza, Suite 1850,
Los Angeles, CA 91608
Tel: (818) 755-7000
Contact: Seth A. Ribner

SULLIVAN & CROMWELL
1888 Century Park East,
Los Angeles, CA 90067-1725
Tel: (310) 712-6600
Contact: Robert A. Sacks

WILSON, SONSINI, GOODRICH & ROSATI
650 Page Mill Road,
Palo Alto, CA 94304-1050
Tel: (650) 493-9300
Contact: Bruce G. Vanyo / Boris Feldman /
Steven M. Schatz

## COLORADO

COOLEY GODWARD, LLP
380 Interlocken Crescent, Suite 900,
Broomfield, CO 80021-8023
Tel: (720) 566-4000
Contact: James E. Nesland

## DISTRICT OF COLUMBIA

ARNOLD & PORTER
555 Twelfth Street, NW,
Washington, DC 20004-1202
Tel: (202) 942-5672
Contact: Scott B. Schreiber

CAHILL GORDON & REINDEL
1990 K Street, N.W., Suite 950,
Washington, DC 20006
Tel: (202) 862-8900
Contact: Donald J. Mulvihill

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.,
Washington, DC 20036-5306
Tel: (202) 887-3609
Contact: F. Joseph Warin

GREENBERG TRAURIG
800 Connecticut Avenue, N.W., Suite 500,
Washington, DC 20036
Tel: (202) 331-3100
Contact: C. Allen Foster / Eric C. Rowe /
Joe R. Reeder

PATTON BOGGS LLP
2550 M Street, N.W.,
Washington, DC 20037
Tel: (202) 457-6000
Contact: Eric A. Kuwana / Lanny J. Davis /
Ronald S. Liebman

SULLIVAN & CROMWELL
1701 Pennsylvania Avenue, N.W.,
Washington, DC 20006-5805
Tel: (202) 956-7500
Contact: Daryl A. Libow / Margaret K.
Pfeiffer

WILLKIE FARR & GALLAGHER
Three Lafayette Centre,
1875 K Street, N.W.
Washington, DC 20006-1238
Tel: (202) 303-1105
Contact: Kevin B. Clark

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

WILMER, CUTLER & PICKERING
'45 M Street, N.W.,
.ashington, DC 20037
Tel: (202) 663-6000
Contact: Charles A. Davidow / David P.
Donovan

### DELAWARE

BLANK ROME COMISKY & MCCAULEY LLP
1201 Market Street, 21st Floor,
Wilmington, DE 19801
Tel: (302) 425-6400
Contact: Alan J. Hoffman / Cathy L. Reese
/ Ian Comisky

WOLF, BLOCK, SCHORR AND SOLIS-
COHEN LLP
One Rodney Square, Suite 300,
920 King Street,
Wilmington, DE 19801-3319
Tel: (302) 777-5860
Contact: David J. Margules

### FLORIDA

AKERMAN SENTERFITT & EIDSON, P.A.
Citrus Center, 17th Floor,
55 South Orange Avenue,
Orlando, FL 32801
Tel: (407) 843-7860
Contact: J. Thomas Cardwell

AKERMAN SENTERFITT & EIDSON, P.A.
SunTrust International Center, 28th Floor,
Miami, FL 33131
Tel: (305) 374-5600
Contact: Stanley H. Wakshlag

CARLTON FIELDS
4000 International Place,
100 S.E. Second Street,
Miami, FL 33131-9101
Tel: (303) 530-0050
Contact: Steven J. Brodie

CARLTON FIELDS
One Harbour Place,
Tampa, FL 33602-5790
Tel: (813) 223-7000
Contact: Richard A. Denmon

GREENBERG TRAURIG
1221 Brickell Avenue,
Miami, FL 33131
Tel: (305) 579-0500
Contact: Hilarie Bass

GREENBERG TRAURIG
777 South Flagler Drive,
West Palm Beach, FL 33401
Tel: (561) 650-7900
Contact: Mark F Bideau

GREENBERG TRAURIG
111 North Orange Avenue,
Orlando, FL 32801
Tel: (407) 420-1000
Contact: Tucker H Byrd

GREENBERG TRAURIG
101 East College Avenue,
Post Office Drawer 1838
Tallahassee, FL 32302
Tel: (850) 222-6891
Contact: Barry Richard

HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600,
P.O. Drawer 810 (Zip 32302),
Tallahassee, FL 32301
Tel: (850) 224-7000
Contact: Robert R. Feagin / Elizabeth
Bevington

HOLLAND & KNIGHT LLP
625 North Flagler Drive, Suite 700,
West Palm Beach, FL 33401
Tel: (561) 833-2000
Contact: D. Culver (Skip) Smith

HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600,
P.O. Box 1525 (Zip 32802),
Orlando, FL 32801
Tel: (407) 244-1115
Contact: William Wilson

HOLLAND & KNIGHT LLP
701 Brickell Avenue - Suite 3000,
P.O. Box 015441 (Zip 33101),
Miami, FL 33131
Tel: (305) 374-8500
Contact: Greg Baldwin / Tracy A. Nichols

HOLLAND & KNIGHT LLP
400 North Ashley Drive, Suite 2300,
Tampa, FL 33602
Tel: (813) 227-8500
Contact: Francis Curran / Frederick S.
Schrils / G. Calvin Hayes

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**HOLLAND & KNIGHT LLP**
North Laura Street, Suite 3900,
.O. Box 52687 (Zip 32201),
Jacksonville, FL 32202
Tel: (904) 353-2000
Contact: Fred Lotterhos / George E Schulz
Jr / Michael G. Tanner

**MCGUIREWOODS LLP**
Bank of America Tower,
50 North Laura Street, Suite 3300,
Jacksonville, FL 32202-3661
Tel: (904) 798-2693
Contact: David M. Wells

**STEEL HECTOR & DAVIS LLP**
200 South Biscayne Boulevard,
Miami, FL 33131-2398
Tel: (305) 577-2957
Contact: Lewis F. Murphy, P.A. / Wendy
Leavitt

**STROOCK & STROOCK & LAVAN LLP**
200 South Biscayne Boulevard, Suite,
Miami, FL 33131-2385
Tel: (305) 358-9900
Contact: Richard B. Simring / Robert W.
urken

## GEORGIA

**ALSTON & BIRD**
One Atlantic Center,
1201 W. Peachtree Street,
Atlanta, GA 30309-3424
Tel: (404) 881-7343
Contact: Peter Q. Bassett

**ALSTON & BIRD**
One Atlantic Center,
1201 W. Peachtree St.,
Atlanta, GA 30309
Tel: (404) 881-7000
Contact: John Goselin / Mary Gill / Todd
R. David

**KING & SPALDING**
191 Peachtree Street,
Atlanta, GA 30303-1763
Tel: (404) 572-4600
Contact: M. Robert Thornton / Michael R.
Smith

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
600 Peachtree Street, N.W., Suite 2400,
Atlanta, GA 30308-2222
Tel: (404) 815-2500
Contact: J. Allen Maines

**SMITH, GAMBRELL & RUSSELL, LLP**
Suite 3100, Promenade II,
1230 Peachtree Rd., N.E.,
Atlanta, GA 30309-3592
Tel: (404) 815-3730
Contact: John G. Despriet

## ILLINOIS

**KATTEN MUCHIN ZAVIS ROSENMAN**
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5452
Contact: David H. Kistenbroker

**KATTEN MUCHIN ZAVIS ROSENMAN**
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5200
Contact: Pamela G. Smith / Leah J.
Domitrovic / Steven L. Bashwiner / Mary
Ellen Hennessy / Bonita L. Stone

**KIRKLAND & ELLIS**
200 East Randolph Drive,
Chicago, IL 60601
Tel: (312) 861-2000
Contact: Garrett B. Johnson / Robert J.
Kopecky

**SIDLEY AUSTIN BROWN & WOOD LLP**
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7850
Contact: Hillie R. Sheppard

**SIDLEY AUSTIN BROWN & WOOD LLP**
Bank One Plaza,
10 South Desrborn Street,
Chicago, IL 60603
Tel: (312) 853-7279
Contact: Eugene A. Schoon

**SIDLEY AUSTIN BROWN & WOOD LLP**
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7734
Contact: Walter C. Carlson

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

SONNENSCHEIN NATH & ROSENTHAL
3000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-8224
Contact: Christopher Q. King

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-7483
Contact: David L. Schiavone

## LOUISIANA

LOCKE LIDDELL & SAPP LLP
601 Poydras Street, Suite 2400,
New Orleans, LA 70130-6036
Tel: (504) 558-5100
Contact: Brad Foster / John McElhaney /
Morris Harrell / Peter Flynn

## MASSACHUSETTS

HALE & DORR LLP
60 State Street,
Boston, MA 02109
Tel: (617) 526-6000
Contact: James W. Prendergast / Jeffrey
B. Rudman / John F. Batter

HUTCHINS, WHEELER & DITTMAR P.C.
101 Federal Street,
Boston, MA 02110
Tel: (617) 951-6624
Contact: David S. Rosenthal / John
Hughes

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center,
Boston, MA 02111
Tel: (617) 542-6000
Contact: Patrick J. Sharkey / Peter M.
Saparoff

ROPES & GRAY
One International Place,
Boston, MA 02110-2624
Tel: (617) 951-7566
Contact: John D. Donovan

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7363
Contact: Jordan D. Hershman

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7253
Contact: Brian E. Pastuszenski

## MINNESOTA

DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500,
Minneapolis, MN 55402
Tel: (612) 340-2600
Contact: Brian E. Palmer / Edward J.
Pluimer / J. Jackson / Peter W. Carter /
Roger J. Magnuson

FAEGRE & BENSON LLP
90 South Seventh Street,
Minneapolis, MN 55402-3901
Tel: (612) 336-3000
Contact: Robert L. Schnell / Thomas L.
Kimer

WINTHROP & WEINSTINE, PA
3000 Dain Rauscher Plaza,
60 South Sixth Street,
Minneapolis, MN 55402
Tel: (612) 347-0700
Contact: David P. Pearson / Steven C.
Tourek / Thomas H. Boyd

## NEW YORK

ARNOLD & PORTER
399 Park Avenue,
New York, NY 10022-4690
Tel: (212) 715-1000
Contact: Kent A. Yalowitz / Scott B.
Schreiber

BLANK ROME TENZER GREENBLATT LLP
The Chrysler Building,
405 Lexington Avenue,
New York, NY 10174
Tel: (212) 885-5000
Contact: Robert J. Mittman / Harris N.
Cogan

BROBECK, PHLEGER & HARRISON LLP
1633 Broadway, 47th Floor,
New York, NY 10019
Tel: (212) 581-1600
Contact: Francis S. Chlapowski / Gregory
A. Markel

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

CADWALADER, WICKERSHAM & TAFT
) Maiden Lane,
..ew York, NY 10038
Tel: (212) 504-6000
Contact: Dennis J. Block / Howard R.
Hawkins / Jeffrey Q. Smith / Jonathan M.
Hoff

CAHILL GORDON & REINDEL
Eighty Pine Street,
New York, NY 10005
Tel: (212) 701-3000
Contact: Charles A. Gilman / Immanuel
Kohn / Thomas J. Kavaler

CLIFFORD CHANCE US  LLP
200 Park Avenue,
New York, NY 10166
Tel: (212) 878-8000
Contact: James B. Weidner / James N.
Benedict / John K. Carroll / Mark
Pomerantz / Mark Holland

CRAVATH, SWAINE & MOORE
Worldwide Plaza,
825 Eighth Avenue,
New York, NY 10019-7475
al: (212) 474-1000
Contact: Evan R. Chesler / Francis P.
Barron / Julie A. North / Keith R. Hummel /
Paul C. Saunders / Peter T. Barbur /
Richard W. Clary / Robert H. Baron /
Ronald S. Rolfe / Rory O. Millson /
Thomas G. Rafferty

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON
One New York Plaza,
New York, NY 10004
Tel: (212) 859-8000
Contact: John A. Borek / Sheldon Raab

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue,
New York, NY 10166-0193
Tel: (212) 351-4000
Contact: David Grais / Wesley G. Howell /
Peter Beshar

GREENBERG TRAURIG
885 Third Avenue, 21st Floor,
New York, NY 10022
Tel: (212) 801-3134
Contact: Alan Mansfield

KATTEN MUCHIN ZAVIS ROSENMAN
575 Madison Avenue,
New York, NY 10022
Tel: (212) 940-8800
Contact: David Kistenbroker, Robert W.
Gottlieb and Joel W. Sternman.

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER
425 Park Avenue,
New York, NY 10022
Tel: (212) 836-8663
Contact: Fredric W. Yerman

KIRKLAND & ELLIS
Citicorp Center, 153 East 53rd Street,
New York, NY 10022-4675
Tel: (212) 446-4800
Contact: Frank M. Holozubiec / Yosef J.
Riemer

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue,
New York, NY 10022
Tel: (212) 715-9100
Contact: Gary P. Naftalis / Alan Friedman

MAYER, BROWN ROWE & MAW
1675 Broadway,
New York, NY 10019
Tel: (212) 506-2500
Contact: Dennis P. Orr / Richard A. Spehr
/ Steven Wolowitz

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5832
Contact: Michael L. Hirschfeld

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5149
Contact: Scott A. Edelman

MORRISON & FOERSTER LLP
1290 Avenue of the Americas,
New York, NY 10104
Tel: (212) 468-8000
Contact: Anthony M. Radice / Jack C.
Auspitz

PAUL, HASTINGS, JANOFSKY & WALKER LLP
399 Park Avenue, Thirty-First Floor,
New York, NY 10022-4697
Tel: (212) 318-6000
Contact: J. Allen Maines

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

PAUL, WEISS, RIFKIND, WHARTON &
   RISON
1285 Avenue of the Americas,
New York, NY 10019-6064
Tel: (212) 373-3000
Contact: Daniel J. Beller / Martin
Flumenbaum / Claudia Hammerman / Brad
S. Karp / Mark F. Pomerantz / Daniel J.
Kramer / Richard A. Rosen

SCHULTE ROTH & ZABEL LLP
900 Third Avenue,
New York, NY 10022
Tel: (212) 756-2000
Contact: Betty Santangelo / Howard O.
Godnick / Irwin J. Sugarman / Michael S.
Feldberg / Robert M. Abrahams

SIMPSON THACHER & BARTLETT
425 Lexington Avenue,
New York, NY 10017
Tel: (212) 455-2000
Contact: Bruce D. Angiolillo / George M.
Newcombe / Michael J. Chepiga / Paul C.
Curnin / Peter Kazanoff / Roy L. Reardon

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane,
New York, NY 10038
Tel: (212) 806-5400
Contact: Laurence Greenwald / Melvin A.
Brosterman / Robert Lewin

SULLIVAN & CROMWELL
125 Broad Street,
New York, NY 10004-2498
Tel: (212) 558-4000
Contact: D. Stuart Meiklejohn / Gandolfo V.
DiBlasi / John L. Hardiman / John L.
Warden / Philip L. Graham, Jr. / Richard H.
Klapper

WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd Street, 29th Floor,
New York, NY  10019
Tel: (212) 403-1235
Contact:  John F. Savarese

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue,
New York, NY 10153
Tel: (212) 310-8000
Contact: Greg A. Danilow / Irwin H. Warren
/ Joseph Allerhand

WILLKIE FARR & GALLAGHER
787 Seventh Avenue,
New York, NY 10019-6099
Tel: (212) 728-8000
Contact: Michael R. Young / Richard
L. Posen

WILMER, CUTLER & PICKERING
520 Madison Ave.,
New York, NY 10022
Tel: (212) 230-8800
Contact: Peter Vigeland / Robert B.
McCaw

## OHIO

JONES, DAY, REAVIS & POGUE
North Point, 901 Lakeside Avenue,
Cleveland, OH 44114
Tel: (216) 586-3939
Contact: John M. Newman / John W.
Edwards

## OREGON

DAVIS WRIGHT TREMAINE
2300 First Interstate Tower,
1300 S.W. Fifth Avenue,
Portland, OR 97201
Tel: (503) 241-2300
Contact: John F. McGrory

FOSTER PEPPER & SHEFELMAN
101 S.W. Main Street, 15th Floor,
Portland, OR 97204-3223
Tel: (503) 221-0607
Contact: Peter S. Ehrlichman / Tim Filer

LANE POWELL SPEARS LUBERSKY LLP
601 S.W. Second Avenue, Suite 2100,
Portland, OR 97204
Tel: (503) 778-2100
Contact: D. Meredith Wilson / Milo
Petranovich / Robert E. Maloney

## PENNSYLVANIA

BLANK ROME COMISKY & MCCAULEY LLP
One Logan Square,
Philadelphia, PA 19103-6998
Tel: (215) 569-5500
Contact: Alan J. Hoffman / Alan M.
Lieberman / Alexander D. Bono / Ian
Comisky / Laurence S. Shtasel / Matthew
J. Siembieda / Richard P. McElroy

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

BUCHANAN INGERSOLL, PC
e Oxford Centre, 20th Floor,
1 Grant Street,
Pittsburgh, PA 15219-8800
Tel: (412) 562-1880
Contact: John R. Leathers

MORGAN, LEWIS & BOCKIUS
1701 Market Street,
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Contact: Marc J. Sonnenfeld / Elizabeth
Hoop Fay / Lisa Klein Wager / The Hon.
Alfred J. (Jim) Lechner / Stuart Sarnoff /
Keith Olin

PEPPER HAMILTON LLP
3000 Two Logan Square, Eighteenth
and Arch Streets,
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Contact: Barbara W. Mather / Jon A.
Baughman / Laurence Z. Shiekman / M.
Duncan Grant / Robert L. Hickok /
Thomas E. Zemaitis

WOLF, BLOCK, SCHORR and SOLIS-
OHEN LLP
1650 Arch Street, 22nd Floor,
Philadelphia, PA 19103-2097
Tel: (215) 977-2058
Contact: Ian A.L. Strogatz / Jay A.
Dubow / Jerome J. Shestack / M.
Norman Goldberger / Mark L. Alderman

## TEXAS

AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P.
Pennzoil Place – South Tower, 711
Louisiana Street, Suite 1900,
Houston, TX 77002
Tel: (713) 220-5813
Contact: Gregg C. Laswell

AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P.
1700 Pacific Avenue, Suite 4100,
Dallas, TX 75201-4675
Tel: (214) 969-2800
Contact: Edward S. Koppman / Mike
Lowenberg

BROBECK, PHLEGER & HARRISON LLP
4801 Plaza on the Lake,
Austin, TX 78746
Tel: (512) 330-4070
Contact: Paul R. Bessette

FULBRIGHT & JAWORSKI L.L.P
1301 McKinney, Suite 5100,
Houston, TX 77010
Tel: (713) 651-5151
Contact: Frank G. Jones / Richard N.
Carrell / Robert Harrell

FULBRIGHT & JAWORSKI L.L.P
2200 Ross Avenue, Suite 2800,
Dallas, TX 75201
Tel: (214) 855-8000
Contact: Karl G. Dial

JENKENS & GILCHRIST, P.C.
1100 Louisiana, Suite 1800,
Houston, TX 77002
Tel: (713) 951-3300
Contact: John Gilliam

JENKENS & GILCHRIST, P.C.
1445 Ross Avenue Suite 3200,
Dallas, TX 75202
Tel: (214) 855-4306
Contact: John Gilliam

LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300,
Austin, TX 78701-4042
Tel: (512) 305-4700
Contact: Brad Foster / John McElhaney /
Morris Harrell / Peter Flynn

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200,
Dallas, TX 75201-6776
Tel: (214) 740-8000
Contact: Brad Foster / John McElhaney /
Morris Harrell / Peter Flynn

LOCKE LIDDELL & SAPP LLP
600 Travis, 3400 Chase Tower,
Houston, TX 77002
Tel: (713) 226-1200
Contact: Brad Foster / John McElhaney /
Morris Harrell / Peter Flynn

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

THOMPSON & KNIGHT, PC
Burnett Plaza, Suite 1600,
801 Cherry Street, Unit #1,
Fort Worth, TX 76102−6881
Tel: (817) 347−1700
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
1200 Smith Street, Suite 3600,
Houston, TX 77002
Tel: (713) 654−8111
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
1700 Pacific Avenue, Suite 3300,
Dallas, TX 75201
Tel: (214) 969−1103
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
98 San Jacinto Boulevard, Suite 1200,
Austin, TX 78701
Tel: (512) 469−6100
Contact: Timothy R. McCormick

WILSON, SONSINI, GOODRICH & ROSATI
3911 Capital of Texas Highway, North
Westech 360, Suite 3350,
Austin, TX 78759−7247
Tel: (512) 338−5400
Contact: Bruce G. Vanyo / Paul Tobias

## VIRGINIA

COOLEY GODWARD, LLP
One Freedom Square, Reston Town
Center, 11951 Freedom Drive,
Reston, VA 20190−5601
Tel: (703) 456−8082
Contact: Robert R. Vieth

GREENBERG TRAURIG
1750 Tysons Boulevard 12th Fl.,
McLean, VA 22102
Tel: (703) 749−1300
Contact: Harry M. Glazer / Joseph T.
Casey, Jr.

MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800,
McLean, VA 22102−4215
Tel: (703) 712−5371
Contact: Warren E. Zirkle

MCGUIREWOODS LLP
One James Center, 901 East Cary Street,
Richmond, VA 23219−4030
Tel: (804) 775−1000
Contact: Stephen D. Busch / Anne Marie
Whittemore

WILMER, CUTLER & PICKERING
1600 Tysons Boulevard, 10th Floor,
Tysons Corner, VA 22102
Tel: (703) 251−9700
Contact: David P. Donovan

WILSON, SONSINI, GOODRICH & ROSATI
7927 Jones Branch Drive, Suite 400,
McLean, VA 22102
Tel: (650) 320−4904
Contact: Bruce Vanyo

## WASHINGTON

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101−1688
Tel: (206) 622−3150
Contact: Stephen M. Rummage

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101−1688
Tel: (206) 622−3150
Contact: Ladd B. Leavens

FOSTER PEPPER & SHEFELMAN
1111 Third Avenue, Suite 3400,
Seattle, WA 98101−3299
Tel: (206) 447−8998
Contact: Peter S. Ehrlichman / Tim Filer

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue, Suite 4100,
Seattle, WA 98101−2338
Tel: (206) 223−7000
Contact: Christopher B. Wells / James B.
Stoetzer / James L. Robart / Larry S.
Gangnes / Rudy A. Englund

PERKINS COIE LLP
1201 Third Avenue, Ste. 4800,
Seattle, WA 98101−3099
Tel: (206) 583−8888
Contact: Barry M. Kaplan / Harry H.
Schneider / Ronald L. Berenstain

## APPENDIX B

**I. DEFINITIONS**

(a) **"Crisis"** means:

    (1) a **Delisting Crisis**; or

    (2) one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a **"Material Effect on an Organization's Common Stock Price"**:

        (i) *Negative earning or sales announcement*

        The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

        (ii) *Loss of a patent, trademark or copyright or major customer or contract*

        The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

        (iii) *Product recall or delay*

        The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

        (iv) *Mass tort*

        The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

        (v) *Employee layoffs or loss of key executive officer(s)*

        The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

        (vi) *Elimination or suspension of dividend*

        The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

        (vii) *Write-off of assets*

        The public announcement that an **Organization** intends to write off a material amount of its assets.

(viii) *Debt restructuring or default*

The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix) *Bankruptcy*

The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x) *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi) *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**$^{SM}$ has been exhausted.

(b) **"Crisis Firm"** means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any **"Crisis Firm"** may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c) **"Crisis Loss"** means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1) the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2) the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3) travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d) **"Crisis Services"** means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e)  "**Delisting Crisis**" means written notice to an **Organization** that such **Organization**'s securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f)  "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)  "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.  EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i)  any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii)  the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii)  the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.  PRE–APPROVED CRISIS FIRMS

(a)  For all **Crises** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed in (1) – (9) below:

(1)  ABERNATHY MACGREGOR
SCANLON
501 Madison Avenue
New York, NY 10022
(212) 371–5999
Contact: James T. M$^{ac}$Gregor

(2)  BURSON–MARSTELLER
230 Park Avenue South
New York, NY  10003–1566
(212) 614–5236
Contact: Michael Claes

(3)  PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, D.C., 20037
(202) 457–6000
Contact: Thomas H. Boggs

(4)  KEKST AND COMPANY
437 Madison Avenue
New York, NY 10022
(212) 593–2655
Contact: Andrew Baer

(5)  ROBINSON LERER & MONTGOMERY
75 Rockefeller Plaza, 6th floor
New York, NY 10019
(212) 484–7721
Contact: Michael Gross

(6)  SARD VERBINNEN & CO.
630 Third Avenue
New York, NY 10017
(212) 687–8080
Contact: Paul Verbinnen or George Sard

(7)   SITRICK & COMPANY  
       2029 Century Park East  
       Suite 1750  
       Los Angeles, CA 90067  
       (310) 788−2850  
       Contact: Michael Sitrick

(9)   KROLL ASSOCIATES  
       900 3rd Avenue  
       New York, NY 10022  
       (212) 833−3385  
       Contact:  Richard G. McCormick

(8)   The MWW Group  
       1212 Avenue of the Americas−5th Floor  
       New York, NY 10036  
       (212) 827−3757  
       Contact: Michael Lendener

(b)   Solely  for **Delisting Crisis**, "**Crisis Firm(s)**" shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

## ENDORSEMENT# 1

This endorsement, effective  *12:01 am*       *September 1, 2002*       forms a part of
policy number   *569-66-78*
issued to    *PHARMACIA CORP*

by        *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that Clause
4. EXCLUSIONS, is hereby amended by adding the following exclusion to the end thereof:

(zz)    alleging, arising out of, based upon, attributable to any failure or omission on
the part of the **Insureds** or an **Organization** to effect or maintain adequate
insurance;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 1*

AUTHORIZED REPRESENTATIVE

(2/90)

**ENDORSEMENT# *2***

This endorsement, effective *12:01 am       September 1, 2002*       forms a part of
policy number    *569-66-78*
issued to *PHARMACIA CORP*


by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NEW JERSEY**

**CANCELLATION/NONRENEWAL ENDORSEMENT**


Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance
company which issued this policy; and 2) "you", "your", "named Insured", "First Named
Insured", and "Insured" mean the Named Corporation, Named Organization, Named
Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other
Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that the
cancellation provision of this policy is amended as follows:

> "Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any
> underwriting reason or guideline(s) which is arbitrary, capricious or unfairly
> discriminatory or without adequate prior notice to the Insured. The underwriting
> reasons or guidelines that an Insurer can use to cancel or nonrenew this policy are
> maintained by the Insurer in writing and will be furnished to the Insured and/or the
> Insured's lawful representative upon written request.

> This shall not apply to any policy which has been in effect for less than sixty (60)
> days at the time notice of cancellation is mailed or delivered, unless the policy is a
> renewal policy."

All other policy terms and conditions not inconsistent with the terms of this endorsement
remain unchanged.

_____

AUTHORIZED REPRESENTATIVE

*END 002*

52158 (6/91)

**ENDORSEMENT** #3

This endorsement, effective   *12:01 a.m.,*      *September 1, 2002*  forms a part of
   .cy number:   *569-66-78*
issued to: *Pharmacia Corp*

by:         **National Union Fire Insurance Company of Pittsburgh, Pa.**

## DISCOVERY AMENDED
## PREMIUM TBD

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

> 1.       Clause 10. DISCOVERY CLAUSE is deleted in its entirety and replaced with the following:

**10.       DISCOVERY CLAUSE**

Except as indicated below, if the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of up to one year following the effective date of such cancellation or nonrenewal (the "Discovery Period"), upon payment of an additional premium amount as shall be determined by the **Insurer** in its sole and absolute discretion, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *4***

This endorsement, effective *12:01 am*     *September 1, 2002*     forms a part of
policy number   *569-66-78*
issued to     *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED AND
### SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

(1)     The Definition of and all provisions referring to "**No Liability**" are hereby
deleted in their entirety.

(2)     Clause 6 RETENTION CLAUSE is deleted in its entirety and replaced by the
following:

### 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising
from a **Claim** which is in excess of the applicable Retention amounts stated
in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to
be borne by an **Organization** and/or the **Insured Person** and remain
uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The
Retention amount specified in:

(i)     Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;
(ii)    Item 4(b) applies to **Loss** that arises out of an **Employment Practices
Claim**; and
(iii)   Item 4(c) applies to **Loss** that arises out of any **Claim** other than a
**Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging
the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated
in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the
highest of such Retention amounts shall be deemed the Retention amount
applicable to **Loss** (to which a Retention is applicable pursuant to the terms
of this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

*END 4*

(2/90)

## ENDORSEMENT# *4*    (Continued)

This endorsement, effective  *12:01 am*       *September 1, 2002*       forms a part of
policy number  *569-66-78*
issued to   *PHARMACIA CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


(3)    Item 4 of  the Declarations is  hereby deleted in  its entirety and  replaced by
       the following:

| 4 | RETENTION: Not applicable to **Non-Indemnifiable Loss** | | | |
|---|---|---|---|---|
| 4(a) | Securities Claims: | $10,000,000 | 4(b) Employment Practices Claims: | $10,000,000 |
| 4(c) | All other Claims: | $10,000,000 | | |


ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.


*END 4*

_____

AUTHORIZED REPRESENTATIVE

(2/90)

**ENDORSEMENT#** *5*

This endorsement, effective *12:01 am*      *September 1, 2002*      forms a part of
policy number   *569-66-78*
issued to    *PHARMACIA CORP*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

..

### EMPLOYMENT PRACTICES COVERAGE DELETED
### FOR ALL INSUREDS OTHER THAN DIRECTORS AND OFFICERS

In consideration of the premium charged, coverage as afforded under this policy is hereby amended to delete coverage for any **Claim** alleging an **Employment Practices Violation** made against any **Insured** other than a Director or Officer. Notwithstanding the foregoing, all provisions shall remain in full force and effect as they relate to other **Claims** under the policy.

It is further understood and agreed that the policy is hereby amended as follows:

1.    Coverage A is hereby deleted in its entirety and replaced with the following:

     **COVERAGE A: EXECUTIVE LIABILITY INSURANCE**

     This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from: a) a **Claim** made against an **Outside Entity Executive**; and, b) an **Employment Practices Claim** made against any **Insured**, other than Directors and Officers.

2.    Coverage B(ii) is hereby deleted in its entirety and replaced with the following:

     (ii)    *Indemnification of an Insured Person:* This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**. Coverage B(ii) shall not apply to **Loss** arising from an **Employment Practices Claim** made against any **Insured**, other than Directors and Officers.

3.    Coverage C is hereby deleted in its entirety and replaced with the following:

     This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such claim, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**. Coverage C shall not apply to **Loss** arising from an **Employment Practices Claim** against any **Insured**.

*END 5*

(2/90)

**ENDORSEMENT# 5**     **(Continued)**

This endorsement, effective *12:01 am*     *September 1, 2002*     forms a part of
policy number   *569-66-78*
sued to   *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.    Definition (aa) " **Wrongful Act**" is amended by deleting subparagraphs (1)(i), (1)(ii) and (1)(iii) in their entirety and replacing them with the following:

   (i)      with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such; provided, however, that coverage as is provided under this paragraph shall not apply to **Loss** arising from an **Employment Practices Claim** made against any **Executive** other than Directors and Officers; or

   (ii)     with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; provided, however, that coverage as is provided under this paragraph shall not apply to **Loss** arising from an **Employment Practices Claim**; or

   (iii)    with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; provided, however, that coverage as is provided under this paragraph shall not apply to **Loss** arising from an **Employment Practices Claim**; or

5.    The Section of the policy entitled EXCLUSIONS is hereby amended by adding the following exclusion (n):

   (n)     alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Employment Practices Claim**; provided, however, that subject to the other terms, conditions and exclusions of this policy, this exclusion shall not apply to any **Employment Practices Claim** made against any Director or Officer.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 5*

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am*     *September 1, 2002*     forms a part of
policy number   *569-66-78*
issued to     *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY – AUTO–SUBSIDIARY PERCENTAGE DECREASED

In consideration of the premium charged, it is hereby understood and agreed that Clause
12 (b)(1) and (2) **ORGANIZATIONAL CHANGES** - **Subsidiary Additions** are hereby
amended by decreasing the automatic **Subsidiary** threshold from 25% to 10%.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 6*

AUTHORIZED REPRESENTATIVE

(2/90)

## ENDORSEMENT# 7

This endorsement, effective *12:01 am*     *September 1, 2002*     forms a part of
policy number  *569-66-78*
`sued to   *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DELETION OF COVERAGE D

In consideration for the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), insurance as is provided by COVERAGE D: **CRISISFUND$^{SM}$** INSURANCE is deleted in its entirety.

This policy shall not pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization**.

All provisions of this policy as they relate to insurance as would be provided to **Crisis Loss** under Coverage D, are hereby deleted in their entirety. However, the provisions of this policy shall remain in full force and effect as they relate to insurance as is provided to **Loss** under Coverage A, Coverage B and Coverage C.

It is further understood and agreed that Subsection (c) of Clause 22 is hereby deleted in its entirety and replaced with the following:

(c)     only after payment of Loss has been made pursuant to Clause 22(a) and Clause 22(b) above, then with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(i) of this policy.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT IN NO EVENT SHALL THIS ENDORSEMENT HAVE THE EFFECT OF EXPANDING COVERAGE AS IS PROVIDED BY COVERAGE A, COVERAGE B OR COVERAGE C OF THIS POLICY.**

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

*END 7*

AUTHORIZED REPRESENTATIVE

(2/90)

**ENDORSEMENT# *8***

This endorsement, effective  *12:01 am*       *September 1, 2002*     forms a part of
policy number  *569-66-78*
issued to  *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured**:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly
      or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited
      to:

      (1)    **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or
             on behalf of, the **Organization**, or discharged or dispersed therefrom; or

      (2)    **Nuclear Material** contained in spent fuel or waste which was or is at any
             time possessed, handled, used, processed, stored, transported or disposed
             of by or on behalf of the **Organization**; or

      (3)    the furnishing by an Insured or the **Organization** of services, materials, parts
             or equipment in connection with the planning, construction, maintenance,
             operation or use of any **Nuclear Facility**; or

      (4)    **Claims** for damage or other injury to the **Organization** or its shareholders
             which allege, arise from, are based upon, are attributed to or in any way
             involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.    (1)    which is insured under a nuclear energy liability policy issued by Nuclear
             Energy Liability Insurance Association, Mutual Atomic Energy Liability
             underwriters, or Nuclear Insurance Association of Canada, or would be
             insured under any such policy but for its termination or exhaustion of its
             limit of liability; or,

      (2)    with respect to which: (a) any person or organization is required to maintain
             financial protection pursuant to the Atomic Energy Act of 1954, or any law
             amendatory thereof, or (b) the **Insured** is, or had this policy not been issued
             would be, entitled to indemnity from the United States of America, or any
             agency thereof, under any agreement entered into by the United States of
             America, or any agency thereof, with any person or organization.

As used in this endorsement:

" **Hazardous Properties**" include radioactive, toxic or explosive properties.

*END 8*

(2/90)

**ENDORSEMENT# 8**     **(Continued)**

This endorsement, effective   *12:01 am      September 1, 2002*   forms a part of
policy number  *569-66-78*
       ued to   *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*


" **Nuclear facility**" means:

   (a) any nuclear reactor;

   (b) any equipment or device designed or used for
         (1) separating the isotopes of uranium or plutonium,
         (2) processing or utilizing spent fuel, or
         (3) handling, processing or packaging wastes;

   (c) any equipment or device used for the processing, fabricating or alloying of special
         nuclear material if at any time the total amount of such material in the custody of
         the Insured at the premises where such equipment or device is located consists of
         or contains more than 25 grams of plutonium or uranium 233 or any combination
         thereof, or more than 250 grams of uranium 235; and

   (d) any structure, basin, excavation, premises or place prepared or used for the storage
         or disposal of waste, and includes the site on which any of the foregoing is located,
         all operations conducted on such site and all premises used for such operations.

" **Nuclear Material**" means source material, special nuclear material or byproduct material.

" **Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a
self-supporting chain reaction or to contain a critical mass of fissionable material.

" **Source Material**,"  " **Special Nuclear   Material**," and  " **Byproduct Material**" have the
meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

" **Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been
used or exposed to radiation in a nuclear reactor.

" **Waste**" means any waste material (1) containing by product material and (2) resulting
from the operation by any person or organization of any **Nuclear Facility** included within
the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



*END 8*                                        _____
                                                            **AUTHORIZED REPRESENTATIVE**
(2/90)

## ENDORSEMENT #9

˥    endorsement, effective    *12:01 a.m.,*    *September 1, 2002*  forms a part of
  ..cy number:   *569-66-78*
issued to: *Pharmacia Corp*

by:        *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (i) AMENDED
### German Subsidiaries Only

In consideration of the premium charged, it is hereby understood and agreed that the following shall be added to the end of Clause 4. Exclusion (i):

Provided, however, this exclusion shall not apply to any Claim(s):

(1)    brought on behalf of an Aktiengesellschaft ("AG") or Gesellschaft Mit Beschraenkter Haftung ("GMBH") by a member of the Board of Directors or the Supervisory Board of such AG or GMBH in his or her capacity as a member of the Board of Directors or the Supervisory Board against a member of the Management Board of the same such AG or GMBH; or

(2)    if such GMBH has no Supervisory Board, brought on behalf of the GMBH pursuant to approval by its owners at its General Meeting (Gesellschafterversammlung), against a member of the Management Board of such GMBH in his or her capacity as a Geschtsfuhrer of such GMBH.

The coverage provided by this endorsement only applies to a Claim(s) brought in Germany, its territories or possessions alleging a violation of law, common or statutory, including breaches of fiduciary duty.

"Aktiengesellschaft" ("AG") means a Subsidiary traded by shares and subject to the law of Aktiengesellschaften which is incorporated or formed in Germany.

"Gesellschaft Mit Beschraenkter Haftung" ("GMBH") means a Subsidiary limited to and subject to the law of limited companies which are incorporated or formed in Germany.

"Supervisory Board" means an Aufsichtsrat, which is a group of natural persons elected by shareholders or employees of the Company, pursuant to the articles of incorporation of such organization, to control and supervise the management of the "Management Board".

"Management Board" means the Vorstand of an AG or Geschnftsfuhrung of a GMBH, which is one or a group of natural persons appointed by the Supervisory Board of the Company, pursuant to the articles of incorporation of such organization, to control and supervise the management of such organization.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# *13*

This endorsement, effective *12:01 am*     *September 1, 2002*     forms a part of
policy number  *569-66-78*
issued to    *PHARMACIA CORP*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY – ADDITION TO THE DEFINITION OF "SUBSIDIARY"

In consideration of the premium charged, it is hereby understood and agreed that the Definition of "Subsidiary" is hereby amended to include the following entity(ies), subject to such Subsidiary's respective Continuity Date.

| SUBSIDIARY | CONTINUITY DATE |
| --- | --- |
| Monsanto Fund | September 01, 1997 |
| Searle Patient-In-Need Foundation | September 01, 1997 |
| DeKalb Genetics Foundation | September 01, 1997 |
| | |
| | |
| | |

For the purpose of the applicability of the coverage provided by this endorsement, the entities listed above and the Company will be conclusively deemed to have indemnified the Insureds of the each respective entity to the extent that such entity or the Company is permitted or required to indemnify such Insureds pursuant to law, common or statutory, or contract, or its charter or by-laws. The entity and the Company hereby agree to indemnify the Insureds to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

Furthermore, for the purpose of the applicability of the coverage provided by this endorsement, the Insurer shall not be liable for any Loss in connection with any Claim(s), made against any Subsidiary listed above or any Insured(s) thereof:

    (1)    alleging, arising out of, based upon or attributable to any pending or prior litigation(s) as of such Subsidiary's respective Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation(s); or

    (2)    alleging any Wrongful Act occurring prior to such Subsidiary's respective Continuity Date, if an Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy.

In all events, coverage as is afforded under this endorsement with respect to a Claim made against each respective entity listed above or any Insureds thereof shall only apply for Wrongful Acts committed or allegedly committed after the respective entity's Continuity Date.

**END 13**

## ENDORSEMENT# *13*   **(Continued)**

This endorsement, effective   *12:01 am*      *September 1, 2002*      forms a part of
policy number   *569-66-78*
issued to    *PHARMACIA CORP*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


It is further understood and agreed that as respects coverage afforded under this
endorsement, the policy is hereby amended as follows:

(1)   Item 5 of the Declarations is hereby deleted in its entirety and replaced by the
following:

   ITEM 5.   RETENTION:

      (a) SECURITIES CLAIMS:
         Judgments, Settlements (all coverages)   None
         Defense Costs (non-Indemnifiable Loss)   None

         Defense Costs (Coverage B(i) and
         Indemnifiable Loss)                  $10,000,000
                                              for Loss arising from Claims
                                              alleging the same Wrongful
                                              Act or related Wrongful
                                              Acts (waivable under
                                              Clause 6 in certain
                                              circumstances)

      (b) OTHER CLAIMS
         Judgments, Settlements and
         Defense Costs (non-Indemnifiable Loss)   None

         Judgments, Settlements and Defense Costs
         (Company and Indemnifiable Loss)      $10,000,000
                                              for Loss arising from Claims
                                              alleging the same Wrongful
                                              Act or related Wrongful
                                              Act.


ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.


*END 13*

_____
AUTHORIZED REPRESENTATIVE

(2/90)

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am     September 1, 2002*     forms a part of
policy number *569-66-78*
issued to *PHARMACIA CORP*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY–ADDITION TO THE DEFINITION OF "SUBSIDIARY"

In consideration of the premium charged, it is hereby understood and agreed that the
Definition of "Subsidiary" is hereby amended to include the following entity(ies), subject to
such Subsidiary's respective Continuity Date.

| SUBSIDIARY | CONTINUITY DATE |
|---|---|
| Nidus Center | December 30, 1998 |
| | |
| | |
| | |
| | |

For the purpose of the applicability of the coverage provided by this endorsement, the
entities listed above and the Company will be conclusively deemed to have indemnified the
Insureds of the each respective entity to the extent that such entity or the Company is
permitted or required to indemnify such Insureds pursuant to law, common or statutory, or
contract, or its charter or by-laws. The entity and the Company hereby agree to indemnify
the Insureds to the fullest extent permitted by law, including the making in good faith of
any required application for court approval.

Furthermore, for the purpose of the applicability of the coverage provided by this
endorsement, the Insurer shall not be liable for any Loss in connection with any Claim(s),
made against any Subsidiary listed above or any Insured(s) thereof:

(1)     alleging, arising out of, based upon or attributable to any pending or prior
litigation(s) as of such Subsidiary's respective Continuity Date, or alleging or
derived from the same or essentially the same facts as alleged in such
pending or prior litigation(s); or

(2)     alleging any Wrongful Act occurring prior to such Subsidiary's respective
Continuity Date, if an Insured knew or could have reasonably foreseen that
such Wrongful Act could lead to a Claim under this policy.

In all events, coverage as is afforded under this endorsement with respect to a Claim made
against each respective entity listed above or any Insureds thereof shall only apply for
Wrongful Acts committed or allegedly committed after the respective entity's Continuity
Date.

*END 14*

**ENDORSEMENT# *14*** **(Continued)**

This endorsement, effective  *12:01 am*      *September 1, 2002*      forms a part of
policy number  *569-66-78*
issued to  *PHARMACIA CORP*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that any coverage that may be provided under this
policy to the entity listed above and/or any Insureds thereof shall apply as specific excess
over any other valid and collectible insurance provided to or applying to such entity,
including but not limited to policy number 8158-88-04 issued to Nidus Center for
Scientific Enterprise by Federal Insurance (and any renewal or replacement thereof).

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

*END 14*

AUTHORIZED REPRESENTATIVE

(2/90)

**ENDORSEMENT# 15**

This endorsement, effective *12:01 am      September 1, 2002*      forms a part of
policy number   *569-66-78*
issued to   *PHARMACIA CORP*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### Global Liberalization Endorsement

In consideration of the premium charged, it is hereby understood and agreed that in the
event that there is a covered Claim which is brought in a Foreign Jurisdiction to which this
policy would apply (subject to all the terms, conditions and exclusions of this policy) and
there is an inconsistency between the terms, conditions and exclusions of this policy and
the terms, conditions and exclusions of the basic policy form offered in such Foreign
Jurisdiction by American International Group ("Foreign Policy"), than the Insurer hereby
agrees to apply to such covered Claim those basic policy terms, conditions and exclusions
offered in such Foreign Policy which are more favorable to the Insured, subject to all to the
other terms, conditions and exclusion of this policy.

The terms "Foreign Jurisdiction" shall mean any jurisdiction other than the United States,
Canada or any territories, possessions or province thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 15*

AUTHORIZED REPRESENTATIVE

(2/90)

**ENDORSEMENT# *16***

This endorsement, effective *12:01 am      September 1, 2002*      forms a part of
policy number   *569-66-78*
issued to    *PHARMACIA CORP*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

.....

## DEFINITION OF COMPANY AMENDED
## TO INCLUDE ADDITIONAL ENTITY

In consideration of the premium charged it is hereby understood and agreed that the
Definition of Company is amended to include the following entity(ies),

<u>ENTITY</u>                                    <u>CONTINUITY DATE</u>

PHARMACIA & UPJOHN, INC.               MARCH 31, 2000

It is further understood and agreed that only as respects any additional coverage granted
by virtue of this endorsement, the Insurer shall not be liable to make any payment for Loss
in connection with any Securities Claim made against any entity listed above or any
Claim(s) made against any natural person Insured of such entity alleging, arising out of,
based upon or attributable to or the same as any pending or prior litigation as of such
entity's respective Continuity Date (listed above), or alleging or derived from the same or
essentially the same facts as alleged in such pending or prior litigation.

In all events, coverage as is afforded under this policy with respect to any Claim made
against an entity listed above or any natural person Insureds thereof, shall only apply for
Wrongful Acts committed or allegedly committed after March 31, 2000 and prior to the
effective time the Named Corporation ceased to own greater than a fifty percent (50%)
ownership interest in such entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

*END 16*

_____
AUTHORIZED REPRESENTATIVE

(2/90)