# EXHIBIT B



# Arch
## Insurance Group

# ARCH SPECIALTY INSURANCE COMPANY
## A Wisconsin Corporation

ADMINISTRATIVE OFFICE
One Liberty Plaza
53rd Floor
New York, NY  10006
Tel: 800-817-3252

HOME OFFICE
300 First Stamford Place
Stamford, CT  06902

## EXCESS INSURANCE POLICY

*UNLESS OTHERWISE PROVIDED IN THE UNDERLYING POLICY(IES), THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS AND EXPENSES.*

## DECLARATIONS

Terms appearing in **bold** are defined in the Policy.

---

Policy No.: 12DOX05205 00

**Item 1. Named Entity:** Pharmacia Corporation

Principal Address:  100 Route 206 North
                    Peapack, NJ 07977

**Item 2. Policy Period**:

From: September 1, 2002 at 12:01 a.m. (local time at the address stated in Item 1.)

To:   September 1, 2003 at 12:01 a.m. (local time at the address stated in Item 1.)

Item 3. Limit of Liability (inclusive of defense costs and expenses):

a.     Each **Claim**:                                              $10,000,000

b.     Maximum aggregate Limit of Liability for
       all **Claims** during the **Policy Period**:                 $10,000,000

Item 4. **Followed Policy**:

Issuing Carrier:     National Union Fire Insurance Company of Pittsburgh, PA

Form:  Executive and Organization Liability Insurance Policy – 75011 (2/00)

Policy Number:     569-66-78

Limit of Liability: $25,000,000

Deductible or Self Insured Retention: $10,000,000

---

Marsh
New York, New York
RECEIVED

JAN – 4 2005

Item 5.  **Underlying Policy(ies):**

| | Issuing Company | Policy No. | Limits of Liability | Attachment |
|---|---|---|---|---|
| **A.  Primary Policy** | | | | |
| | National Union Fire Insurance Company of Pittsburgh, PA | 569-66-78 | $25,000,000 | $0 |
| **B. Underlying Excess Policy(ies)** | | | | |
| First Excess: | Zurich American Insurance Company | DOC 7912341 05 | $25,000,000 | $25,000,000 |
| Second Excess: | Continental Casualty Company | 120181795 | $15,000,000 | $50,000,000 |
| Third Excess: | Federal Insurance Company | 8147-7415 | $15,000,000 | $65,000,000 |
| Fourth Excess: | Lloyd's of London | FZ0200725 | $5,000,000 p/o $10,000,000 | $80,000,000 |
| Fifth Excess: | U.S. Specialty Insurance Company | 24-MGU-02-A3090 | $5,000,000 p/o $10,000,000 | $80,000,000 |
| Sixth Excess: | XL Specialty Insurance Company | ELU 81708-02 | $15,000,000 | $90,000,000 |
| Seventh Excess: | Allied World Assurance Company Ltd. | C00875 | $25,000,000 | $105,000,000 |
| Eighth Excess: | | | | |

Item 6.  Premium:          $588,000.00

Item 7. Endorsements Applicable to Coverage at Inception of Policy:

| | |
|---|---|
| 00 DOX0112 00 04 03 | EXCESS INSURANCE POLICY |
| 00 ML0207 00 05 03 | PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS) |
| 00 ML0207 00 05 03 | DISCOVERY PERIOD ENDORSEMENT (EXCESS) |
| 00 DOX0120 00 05 03 | NON-CANCELLABLE/PREMIUM FULLY EARNED ENDORSEMENT (EXCESS) |
| 02 ML 0003 00 08 02 | SERVICE OF SUIT |

| Item 8.  Notices to **Excess Insurer:** | All Other Notices To Be Sent To: |
|---|---|
| Notice Of **Claim(s)** To Be Sent To: | |
| Claims Department | Executive Assurance Underwriting |
| Arch Specialty Insurance Company | Arch Specialty Insurance Company |
| One Liberty Plaza, 53rd Floor | One Liberty Plaza, 53rd Floor |
| New York, NY 10006 | New York, NY 10006 |
| Tel: (800) 817-3252 | Tel: (800) 817-3252 |
| Fax: (212) 651-6499 | Fax: (212) 651-6499 |

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY, THE APPLICATIONS FOR ALL **UNDERLYING INSURANCE**, ALL MATERIALS SUBMITTED THEREWITH AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE EXCESS INSURANCE POLICY.

The **Excess Insurer** has caused this Policy to be signed and attested to by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the **Excess Insurer**.

Authorized Representative

Date   12 20 04

Secretary

President

## EXCESS INSURANCE POLICY

In consideration of the payment of the premium set forth in Item 6. of the Declarations of this Policy, and in reliance upon all statements made in the Application for this Policy, in the applications for all **Underlying Insurance** and in any other materials submitted to the Insurer designated in the Declarations of this Policy (hereinafter "the **Excess Insurer**"), which are incorporated into and constitute part of this Policy, and subject to the Limit of Liability set forth in Item 3. of the Declarations of this Policy, the **Excess Insurer** agrees with the **Insureds** as follows:

### SECTION I

INSURING AGREEMENT.

A. The **Excess Insurer** shall provide the **Insureds** coverage for **Claims** in excess of the **Underlying Insurance**.

B. The insurance coverage afforded by this Policy shall apply only after exhaustion of the **Underlying Limit** solely as a result of actual payment, in legal currency, under the **Underlying Insurance** in connection with **Claim(s)** and after the **Insureds** shall have paid the full amount of any applicable deductible or self insured retentions.

C. Except with respect to premium and Limit of Liability and as provided in this Policy, the insurance coverage afforded by this Policy shall apply in conformance with the terms and conditions of the **Followed Policy** and in conformance with any terms and conditions further limiting or restricting coverage in this Policy or in any other **Underlying Insurance**. In no event shall this Policy grant broader coverage than that provided by the most restrictive policy included in the **Underlying Insurance**.

### SECTION II

LIMIT OF LIABILITY.

A. The amount stated in Item 3.b. of the Declarations of this Policy shall be the maximum amount payable by the **Excess Insurer** on account of all **Claims** during the **Policy Period.**

B. All payments by the **Excess Insurer** in connection with a **Claim** shall be part of and not in addition to the Limit of Liability set forth in Item 3. of the Declarations of this Policy, and shall reduce such Limit of Liability.

### SECTION III

DEFINITIONS.

All terms defined in this Policy appear in **bold.**

A. **Claim(s)** shall have the same meaning in this Policy as given to it in the **Followed Policy.**

B. **Insured(s)** means any person(s) or entity(ies) that are entitled to coverage under the **Followed Policy** at its inception.

C. **Followed Policy, Named Entity, Primary Policy, Policy Period** and **Underlying Excess Policies,** are as identified in the Declarations of this Policy.

D. **Underlying Insurance** means the **Primary Policy** and any **Underlying Excess Policies** listed in Item 5. of the Declarations of this Policy.

00 DOX0112 00 04 03                                                                                          Page 1 of 4

E.  **Underlying Limit** means an amount equal to the aggregate of all limits of liability for all **Underlying Insurance,** plus the deductible or self insured retention, if any, applicable under the **Primary Policy.**

## SECTION IV

MAINTENANCE OF AND CHANGES TO **UNDERLYING INSURANCE.**

A.  As a condition to the coverage of this Policy, the **Insureds** shall maintain all **Underlying Insurance** in full force and effect with solvent insurers during the **Policy Period,** except for reduction or exhaustion of the **Underlying Limit** by payment in connection with **Claims.**

B.  In the event of depletion of the **Underlying Limit** by payment in connection with **Claim(s),** this Policy shall, subject to the Limit of Liability stated in Item 3. of the Declarations of this Policy, continue to apply as excess insurance over the amount of insurance remaining under such **Underlying Insurance.**

C.  In the event of exhaustion of all of the **Underlying Limit** by payment in connection with **Claim(s),** this Policy shall, subject to the Limit of Liability stated in Item 3. of the Declarations of this Policy, continue in force as primary insurance subject to the terms and conditions and the deductible or self insured retention under the **Primary Policy,** which deductible or self insured retention shall be applied to any subsequent **Claim** in the same manner as specified in the **Primary Policy.**

D.  This Policy shall drop down only in the event of reduction or exhaustion of all of the **Underlying Limit** by payment in connection with **Claim(s),** and shall not drop down for any other reason including, but not limited to:  (i) any exhaustion of a sublimit of any **Underlying Insurance;** or (ii) uncollectibility, in whole or in part, of any **Underlying Insurance** whether due to financial impairment or insolvency, liquidation, or for any other reason; or (iii) failure of the **Insured** to maintain any **Underlying Insurance.**  The risk of any gaps in coverage or uncollectibility for any reason is expressly retained by the **Insured,** and is not assumed or insured by the **Excess Insurer.**

E.  As a condition precedent to coverage under this Policy, the **Insureds** shall give to the **Excess Insurer** written notice and the full particulars of:  (i) cancellation of any **Underlying Insurance;** (ii) reduction and or exhaustion of the **Underlying Limit;** (iii) additional or return premium in connection with any **Underlying Insurance;** (iv) any changes to the **Underlying Insurance** by rewrite, endorsement or otherwise; and (v) the initiation of any receivership, liquidation, dissolution, rehabilitation or similar proceeding by any regulatory authority or any other person or entity against the issuing company of any **Underlying Insurance.**  Such notice shall be sent to the **Excess Insurer** immediately upon receipt of such notice by the **Named Entity** or any **Insured.**

F.  In the event of any changes to any **Underlying Insurance** during the Policy Period, this Policy shall become subject to any such changes upon the effective date of the changes in the **Underlying Insurance** only if and to the extent that consent of the **Excess Insurer** is expressly endorsed hereon and provided that the **Insureds** shall pay any additional premium reasonably required by the **Excess Insurer** for such changes.

G.  This Policy shall terminate immediately upon the termination of any **Underlying Insurance,** whether by the **Insured** or by the issuer of the **Underlying Insurance.**  Notice of cancellation or non-renewal of all or part of the **Underlying Insurance** duly given by any such Insurer shall serve as notice of the cancellation or non-renewal of this Policy by the **Excess Insurer.**  Return premium, if any, shall be as provided in Section VIII.C. below.

## SECTION V

DUTIES IN THE EVENT OF A CLAIM.

A.  With respect to any **Claim(s)** that, alone or combined, might result in payment pursuant to the insurance coverage afforded under this Policy, the **Insured** shall not admit liability and shall not agree to settle any **Claim** without the **Excess Insurer's** consent.

B.  The **Insured** shall give notice under this Policy as provided in the **Followed Policy** and at the address shown in Item 8. of the Declarations of this Policy.  Notice to the issuer of the **Followed Policy**, the **Primary Policy**, or any other **Underlying Insurer** shall not constitute notice to the **Excess Insurer.**

C.  With respect to any **Claim(s)** that, alone or combined, might result in payment pursuant to the insurance coverage afforded under this Policy, no costs, charges or expenses for investigation or defense of any **Claim** shall be incurred, or settlements made, without the **Excess Insurer's** consent, such consent not to be unreasonably withheld.

D.  If legal proceedings are begun, the **Insured** shall forward to the **Excess Insurer** a copy of each pleading or document received by the **Insured** or the **Insured's** representatives, together with copies of reports or investigations made by the **Insured** or the **Insured's** representatives with respect to such proceedings.

E.  The **Excess Insurer** may, at its sole option, elect to effectively participate in the investigation, settlement or defense of any **Claim** against any **Insured** for matters covered by this Policy even if the **Underlying Limit** has not been exhausted.  The **Excess Insurer** may, at its own expense, elect to appeal any judgment which may involve the insurance provided by this Policy.

## SECTION VI

COOPERATION.     The **Insured** shall give the **Excess Insurer** such information and cooperation as the **Excess Insurer** may reasonably require.

## SECTION VII

SUBROGATION AND RECOVERIES.    In the event of any payment under this Policy, the **Excess Insurer** shall be subrogated to all of the **Insureds'** rights of recovery against any person or organization, and the **Insured** shall execute and deliver all instruments and papers and do whatever else may be necessary to secure such rights.

Any amount recovered after payment under this Policy shall be apportioned in the inverse order of payment to the extent of actual payment.  The expenses of all such recovery proceedings shall be apportioned in the same ratio as the recoveries.

## SECTION VIII

CANCELLATION.

A.  This Policy may be cancelled by the **Named Entity** at any time by written notice or by surrender of this Policy to the **Excess Insurer** at the address listed in Item 8. of the Declarations of this Policy, stating when thereafter the cancellation shall be effective.

B.  Except as provided in Section IV.G. above, this Policy may be cancelled by or on behalf of the **Excess Insurer** by mailing or delivering to the **Named Entity** at the address shown in Item 1. of the Declarations of this Policy written notice stating when such cancellation shall be effective.  Notice of cancellation will be provided at least ten (10) days before the effective date of cancellation if the **Excess Insurer** is cancelling

this Policy for nonpayment of premium. Notice of cancellation will be provided at least sixty (60) days before the effective date of cancellation if this Policy is cancelled for any other reason. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall become the end of the **Policy Period**. Delivery of such notice shall be equivalent to mailing.

C.   If this Policy is cancelled by the **Named Entity**, the **Excess Insurer** shall retain the customary short-rate portion of the premium. If this Policy is cancelled by the **Excess Insurer**, the **Excess Insurer** shall send the applicable portion of the pro-rata premium refund to the **Named Entity** at the address shown in Item 1. of the Declarations of this Policy. Premium adjustment may be made as soon as practicable after cancellation is effective and payment or tender of any unearned premium by the **Excess Insurer** shall not be a condition precedent to the effectiveness of cancellation.

## SECTION IX

ASSIGNMENT.     This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Excess Insurer.**

## SECTION X

**NAMED ENTITY** AUTHORIZATION CLAUSE.     By acceptance of this Policy, the **Insureds** and the **Named Entity** agree that the **Named Entity** will act on behalf of all of the **Insureds** as well as the **Named Entity** with respect to the giving and receiving of all notices, the payment of premiums, and the receiving of any return premium that may become due.

## SECTION XI

CAPTIONS.     The headings or captions used in this Policy are for the purposes of reference only and shall not otherwise affect the meaning of this Policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS)

In consideration of the premium charged, it is hereby understood and agreed that:

1.  The **Excess Insurer** shall not be liable to make any payment in connection with a **Claim** arising out of, based upon or attributable to:

    a.  any litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** occurring prior to, or pending as of, September 1, 2002;

    b.  any subsequent litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** arising from or based on any matter alleged in such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**; or

    c.  any **Wrongful Act** which gave rise to such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**, or any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described above, constitute **Interrelated Wrongful Acts**.

2.  "Wrongful Act" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.

3.  "Interrelated Wrongful Acts" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts,, circumstances, situations, events, transactions or causes.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: 12DOX05205 00

Named Insured: Pharmacia Corporation

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: September 1, 2002

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DISCOVERY PERIOD ENDORSEMENT (EXCESS)

In consideration of the premium charged, it is hereby understood and agreed that:

1.       Notwithstanding the provisions of the **Followed Policy**, the **Insureds** shall have no right to purchase any discovery or extended reporting period coverage under this Policy except as provided below.

2.       If the **Excess Insurer** shall refuse to renew this Policy, the **Insureds** shall have the right to elect, by payment of an additional premium to be determined by the **Excess Insurer** of the annual premium set forth in Item 6. of the Declarations of this Policy, a continuation of the coverage afforded by this Policy for the additional period of twelve (12) months following the effective date of such non-renewal (herein referred to as the "Discovery Period"), but only to the extent a **Claim** is first made against the **Insureds** during the Discovery Period for any **Wrongful Act** occurring prior to the end of the **Policy Period** set forth in Item 2. of the Declarations of this Policy and otherwise covered by this Policy. The **Insureds** shall have the right to purchase this Discovery Period only if the **Insureds** also purchase discovery or extended reporting period coverage under all **Underlying Insurance**. The right contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due are received by the **Excess Insurer** within thirty (30) days after the effective date of non-renewal.

3.       The purchase of the Discovery Period shall not increase the Limit of Liability of this Policy set forth in Item 3. of the Declarations of this Policy.

4.       The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period.

5.       The Discovery Period is not cancelable by the **Insureds** or by the **Excess Insurer**.

6.       "**Wrongful Act**" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.

7.       This endorsement and the rights contained herein shall not apply as a result of a renewal quotation with terms and conditions different than the expiring Policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 12DOX05205 00

Named Insured: Pharmacia Corporation

Endorsement Effective Date: September 1, 2002

President

00 ML0207 00 05 03                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NON-CANCELLABLE/PREMIUM FULLY EARNED ENDORSEMENT (EXCESS)**

In consideration of the premium charged, it is hereby understood and agreed that Section VIII, CANCELLATION, of the Policy is deleted in its entirety.

It is also agreed that we will follow form of Endorsement No. 11, Policy Non-Cancellable (Insured/Insurer), of Policy No. 569-66-78 Issued by National Union Fire Insurance Company of Pittsburgh, PA.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 12DOX05205 00

Named Insured: Pharmacia Corporation

Endorsement Effective Date: September 1, 2002

*Constatif Juderson*

President

00 ML0207 00 05 03

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 12DOX05205 00

Named Insured: Pharmacia Corporation

Endorsement Effective Date: September 1, 2002

02 ML 0003 00 08 02