WHITE AND WILLIAMS LLP
Andrew Hamelsky, Esq.
Erica Kerstein, Esq. (*pro hac vice* application to be filed)
Elyor Pogorelskiy, Esq. (*pro hac vice* application to be filed)
The Legal Center, One River Front Plaza
1037 Raymond Blvd. Suite 230
Newark, New Jersey 07102
201-368-7206

*Attorneys for Defendant*
*ARCH SPECIALTY INSURANCE COMPANY*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------------------x
PHARMACIA CORPORATION N/K/A PFIZER, INC.,

                Plaintiff,

-against-

ARCH SPECIALTY INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, and LIBERTY MUTUAL INSURANCE COMPANY,

                DefendantS.
---------------------------------------------------------------------x

No.: 2:18-cv-00510-ES-MAH

**DECLARATION OF ANDREW HAMELSKY IN SUPPORT OF**
**ARCH SPECIALTY INSURANCE COMPANY'S MOTION, PURSUANT TO**
**FED. R. CIV. P. 12(b)(6), TO DISMISS PLAINTIFF'S COMPLAINT**

I, Andrew Hamelsky, hereby declare under penalty of perjury as follows:

    1.    I am an attorney duly admitted to practice law before the courts of the State of New Jersey, and the Bar of the United States District Court for the District of New Jersey.

    2.    I am a partner with the law firm of White and Williams LLP, attorneys for defendant Arch Specialty Insurance Company ("Arch") in the instant action.

3.      I submit the instant declaration in support of Arch's motion, pursuant to Rule 12(b)(6), to dismiss Plaintiff's, Pfizer, Inc.'s ("Pfizer"), complaint as against Arch for the reasons set forth in the accompanying memorandum of law.

4.      This is an insurance coverage dispute arising from Pfizer's, as alleged successor in interest to Pharmacia Corporation ("Pharmacia"),[1] demand for coverage for defense and indemnity in connection with *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*, 03-cv-01519 (D.N.J. Oct. 27, 2003) (the "Garber Action").[2]

5.      The Garber Action, filed on April 7, 2003, arises from alleged misrepresentations and omissions by Pfizer and Pharmacia relating to the safety and efficacy of the drug Celebrex, which was developed by Pharmacia, and co-marketed by Pfizer and Pharmacia.  A true and correct copy of the Consolidated Class Action Complaint in the Garber Action is annexed hereto as Exhibit 1 (the "Garber Complaint").

6.      The Garber plaintiffs alleged that: (a) Pharmacia launched Celebrex in February 1999 for use in reducing inflammation in patients suffering from arthritis; (b) long-term use of common and inexpensive treatments for arthritis are associated with a number of gastrointestinal ("GI") side effects from upset stomach to life-threatening bleeding ulcers; and (c) while Celebrex was roughly the equivalent of these less-expensive treatments, Pharmacia claimed that Celebrex did not have the same GI side effects, and was therefore safer; but this safety advantage had not been proven, so the FDA required Celebrex to carry a warning label.  (*Id.* ¶¶ 2-3.)

---

[1] Pfizer acquired Pharmacia on April 16, 2003.  (Compl. ¶ 14.)  Arch reserves its rights as to whether Pfizer has standing to bring the instant action.

[2] The Garber Action consists of two consolidated actions, *Robert L. Garber v. Pharmacia Corp., et al.*, filed on April 7, 2003, and *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*

7. Dating back to 2001, a variety of consumer plaintiffs alleged misrepresentation and omissions by Pharmacia, as a developer and co-marketer, in connection with the safety of the drug Celebrex. Common to all these lawsuits was the charge that Pharmacia misled the public about the cardiovascular and GI side effects of Celebrex in an effort to compete with existing non-steroidal anti-inflammatory drugs ("NSAID"), and to favorably differentiate Celebrex in the minds of consumers, healthcare providers, and the public.

8. Prior to the September 1, 2002 inception of the Arch Policy, three actions were brought on behalf of consumers alleging material discrepancies between the assurances Pharmacia was making about the absence of GI and cardiovascular side effects from Celebrex and the actual results obtained during the Pharmacia-funded Celecoxib Long-Term Arthritis Safety Study (the "CLASS Study").

9. According to those consumer plaintiffs, Pharmacia and Pfizer made these assurances despite the fact that they possessed information confirming the existence of such adverse side effects by no later than 2000.

10. The three actions are: (a) *Alex Cain, et al. v. Merck & Co., et al.*, 01-CV-03441 (E.D.N.Y. May 29, 2001) (the "Cain Action")[3]; (b) *Jay Leonard v. Pharmacia Corp., et al.*, (D.N.J. Aug. 27, 2001) (the "Leonard Action"); and (c) *John Astin v. Pharmacia Corp., et al.*, (N.J. Super. Ct., Somerset County Aug. 27, 2001) (the "Astin Action") (the Cain, Leonard and Astin Actions are collectively referred to as the "Consumer Actions").

11. A true and correct copy of the Second Amended Class Action Complaint in the Cain Action is annexed hereto as Exhibit 2 (the "Cain Complaint").

---

[3] The initial complaint in the Cain Action was filed on May 29, 2001. The Second Amended Class Action Complaint was filed on September 18, 2002.

12. A true and correct copy of the Class Action Complaint in the Leonard Action is annexed hereto as Exhibit 3 (the "Leonard Complaint").

13. A true and correct copy of the Class Action Complaint in the Astin Action is annexed hereto as Exhibit 4 (the "Astin Complaint") (the Cain, Leonard and Astin Actions are collectively referred to as the "Consumer Actions").

14. A true and correct copy of the Warranty Statement, dated August 29, 2002, and signed by Pharmacia's Chief Executive Officer and Chief Financial Officer, is annexed hereto as Exhibit 5.

15. A true and correct copy of the excess insurance policy No. C000875, issued by Allied World Assurance Company Ltd. to Pharmacia for the Policy Period of September 1, 2002 to September 1, 2003, is annexed hereto as Exhibit 6.

16. A true and correct copy of the *British Medical Journal* published in June 2002 is annexed hereto as Exhibit 7.  (Peter Juni et al., *Are selective COX2 inhibitors superior to traditional non steroidal anti-inflammatory drugs?*, 324 BMJ 1287, 1287-88 (2002), *available at* https://www.researchgate.net/publication/11332923_Are_selective_COX_2_inhibitors_superior_to_traditional_non_steroidal_anti-inflammatory_drugs).

17. A true and correct copy of *The Wall Street Journal* article, published on August 22, 2001, is annexed hereto as Exhibit 8.  (Thomas M. Burton et al., *Study Raises Specter of Cardiac Risk for Users of Popular Arthritis Drugs*, Wall St. J., Aug. 22, 2001, https://www.wsj.com/articles/SB99842672681764284).

18. A true and correct copy of the February 1, 2001 FDA Warning Letter to Pharmacia is annexed hereto as Exhibit 9.  (Pharmacia Corp., FDA Warning Letter, (NDA 20-998), at 1 (Feb. 1, 2001), *available at* http://wayback.archive-

it.org/7993/20170112070214/http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM166486.pdf).

19.    A true and correct copy of Pharmacia's year 2000 Annual Report to Shareholders is annexed hereto as Exhibit 10. (*Pharmacia Annual Report 2000*, at 14, *available at* http://media.corporate-ir.net/media_files/NYS/PHA/reports/ar2000.pdf).

Dated:    March 1, 2018

**WHITE AND WILLIAMS LLP**

By: _____
Andy Hamelsky, Esq.
*Attorneys for Defendant*
ARCH SPECIALTY INSURANCE COMPANY
The Legal Center, One River Front Plaza
1037 Raymond Blvd. Suite 230
Newark, New Jersey 07102
201-368-7206