# **EXHIBIT 4**

SQUITIERI & FEARON, LLP
615 Franklin Turnpike
Ridgewood, New Jersey 07450
Tel: (201) 444-2888

JOSEPH R. SANTOLI, ESQ.
615 Franklin Turnpike
Ridgewood, New Jersey 07450
Tel: (201) 444-2888


Attorneys for Plaintiff

|  |  |
|---|---|
| | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| JOHN ASTIN, individually and on | : SOMERSET COUNTY |
| behalf of all others similarly situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION |
| | : |
| PHARMACIA CORP., PFIZER INC. and | : DOCKET NO. |
| G.D. SEARLE & CO., | : CASE CODE |
| | : |
| Defendants. | : |

------------------------------------------------------------

## SUMMONS

THE STATE OF NEW JERSEY, TO THE ABOVE NAMED DEFENDANTS:


YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named plaintiffs and required to serve upon the attorney for the plaintiffs, whose name and office address appears above, an answer to the annexed complaint within 35 days after the service of the summons and complaint, upon you, exclusive of the day of service. If you fail to answer in accordance with Rule 4:4-6, judgment by default may be rendered against you for the relief demanded in the complaint. You shall promptly file your answer and proof of service thereof, in duplicate, with the Clerk of the Superior Court, Somerset County Courthouse, 20 Northbridge Street, Somerset, New Jersey 08876, in accordance with the rules of Civil Practice and Procedure.


_____
Clerk of the Superior Court


Dated:   August 24, 2001

FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE: CK CG CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

**CIVIL CASE INFORMATION STATEMENT (CIS)**       Use for initial pleadings
(not motions) under R 4:5-1

| ATTORNEY NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Olimpio Lee Squitieri, Esq. | (201) 444-2888 | SOMERSET |

FIRM NAME (If Applicable)                DOCKET NUMBER (When Available)

SQUITIERI & FEARON, LLP

OFFICE ADDRESS                          DOCUMENT TYPE

                                        Complaint and Jury Demand
615 Franklin Turnpike                   Fee enclosed: $175.00
Ridgewood, New Jersey 07450

NAME OF PARTY:
John Astin

CAPTION:       John Astin, Plaintiff v. Pharmacia Corp., Pfizer Inc. and G.D. SEARLE & CO., Defendants.

CASE TYPE NUMBER: 999 (consumer class action)

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN:
____ NONE    X   UNKNOWN

RELATED CASES PENDING:    X   NO  - IF YES, LIST DOCKET NUMBERS:

DO YOU ANTICIPATE ADDING ANY PARTIES: _____ YES   X   NO

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

A.     DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?
       ____ YES        ____ NO   IF YES, IS THAT RELATIONSHIP:
       ____ EMPLOYER-EMPLOYEE ____ FAMILIAL ____ FRIEND/NEIGHBOR
       ____ BUSINESS  X   OTHER (EXPLAIN): Consumer

B.     FEE SHIFTING? ____ YES       X   NO

SPECIAL CASE CHARACTERISTICS:
HANDICAPPED:  No
TRANSLATOR:  No

ATTORNEY SIGNATURE:
                    Olimpio Lee Squitieri

RECEIVED/FILED
SUPERIOR COURT

AUG 27 2001

SOMERSET COUNTY
DEPUTY CLERK

SQUITIERI & FEARON, LLP
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

JOSEPH R. SANTOLI, ESQ.
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

Attorneys for Plaintiff and the Class,

RECEIVED/FILED
SUPERIOR COURT

AUG 2 7 2001

SOMERSET COUNTY
DEPUTY CLERK



| | | |
|---|---|---|
| JOHN ASTIN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) ) | DOCKET NUMBER *SOM L-1322-01* |
| PHARMACIA CORP., PFIZER INC. and G.D. SEARLE & CO., | ) ) ) | |
| Defendants. | ) ) ) | |

_____x

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, alleges as follows upon information and belief pursuant to the

investigation of his counsel, except as to the allegations that pertain to Plaintiff which are based

upon Plaintiff's personal knowledge:

1.      This is an action for economic damages only relating to defendants' sale,

marketing, advertising, promotion and/or distribution of the blockbuster arthritis drug Celebrex.

Plaintiff brings the action on behalf of himself and all other New Jersey consumers of Celebrex

who have been deceived and injured by Defendants' improper acts and practices as set forth in this Complaint.

## The Parties

2.     Plaintiff John Astin is a resident of New Jersey who has purchased Celebrex and has been damaged as a result of the acts alleged in this Complaint.

3.     Defendant Pharmacia Corp. ("Pharmacia") is a Delaware corporation with its principal place of business at 100 Route 206 North, Peapack, New Jersey.  At all relevant times, Defendant Pharmacia manufactured, sold, marketed, advertised, promoted and/or distributed Celebrex globally, including in New Jersey.  At all relevant times Pharmacia was authorized to conduct business and did substantial business in the State of New Jersey including the marketing and sale of Celebrex in New Jersey.

4.     Defendant Pharmacia was created in April 2000 through the merger of Pharmacia & Upjohn with Monsanto Company ("Monsanto") and defendant G.D. Searle & Co. ("Searle"). As a result of that merger, Pharmacia was the successor-in-interest to Monsanto and Searle and continued to operate the business of those companies, including the manufacturing, marketing and distribution of Searle's Celebrex drug.  As a result of the April 2000 merger, Defendant Pharmacia assumed all the debts, obligations and liabilities associated with Celebrex and that line of products.

5.     Defendant Searle is a Delaware corporation with its principal place of business at 5200 Old Orchard Road, Skokie, Illinois.  At all relevant times, Defendant Searle manufactured, sold, marketed, advertised, promoted and/or distributed Celebrex in New Jersey and globally.  At

2

all relevant times Defendant Searle was authorized to conduct business and did substantial business in the State of New Jersey, including the marketing and sale of Celebrex in New Jersey.

6.      Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation headquartered at 235 East 42nd Street, New York, New York. At all relevant times Pfizer was authorized to and did significant business in New Jersey. In addition, at all relevant times, Defendant Pfizer was a co-marketer and co-promoter of Celebrex and obtained significant profits from its sales, promotion, marketing and distribution.

7.      At all relevant times, Defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or employment. Where it is alleged in this Complaint that any Defendant committed any act and/or omission or engaged in any conduct, it is meant that the Defendant committed that act and/or omission or engaged in that conduct by and through its agents and/or employees, and that the act, omission or conduct, occurred with the full authorization or ratification of each Defendant and/or occurred in the normal and routine course and scope of the agency or employment of each Defendant's agent or employee.

8.      Pharmacia, Searle and Pfizer are sometimes collectively referred to as "Defendants" in this Complaint.

## Jurisdiction and Venue

9.      This case is filed pursuant to R. 4:3-2(A), with jurisdiction in Somerset County, where Defendant Pharmacia has its headquarters and where the causes of actions arose that are set forth in this Complaint.

3

10.   This suit is brought under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (hereinafter the "Consumer Fraud Act") and other legal theories to recover damages and other relief, including the costs of suit as well as reasonable attorney fees and expert fees, for the damages Plaintiff has sustained as a result of Defendants' acts and omissions in violation of the Consumer Fraud Act and other laws.

## CLASS ACTION ALLEGATIONS

11.   Plaintiff brings this action as a class action for monetary relief on behalf of a class of all persons who were New Jersey residents at the time they purchased Celebrex or who purchased Celebrex in New Jersey (the "Class").  Plaintiff expressly disclaims any intent to seek any recovery for personal injuries suffered or which may be suffered by any Class member.

12.   Excluded from the Class are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

13.   Plaintiff is a member of the Class that Plaintiff seeks to represent.

14.   The Class is so numerous that joinder of all members is impractical.  Although Plaintiff does not yet know the exact size of the Class, upon information and belief based on published reports, the Class includes at least thousands, and probably millions, of consumers. Accordingly, joinder is impracticable.

15.   There are numerous questions of law and fact common to the Class including:

(a)   Whether Defendants misrepresented material facts concerning Celebrex to Plaintiff and the Class;

4

(b)     Whether Defendants' misrepresentations and omissions violated the New Jersey Consumer Fraud Act;

(c)     Whether Defendants' product labels, marketing and promotional materials and advertisements were misleading and misrepresented the safety and efficiency of Celebrex;

(d)     Whether Defendants negligently designed, manufactured, promoted and/or marketed Celebrex; and

(e)     Whether Plaintiff and the Class are entitled to monetary relief.

16.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the members of the Class purchased Celebrex.

17.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and common issues predominate.  Plaintiff has retained counsel competent and experienced in complex class actions.

18.     Notice can be provided to Class members by a combination of published notice, Internet notice and/or first-class mail using techniques and forms of notice similar to those customarily used in consumer class actions.

19.     Class certification is appropriate because Defendants have acted, or refused to act, on grounds generally applicable to the Class.  A class action is also superior to other available methods for the fair and efficient adjudication of this action.

5

**Defendants Have Repeatedly Misled Consumers,
Including Plaintiff and the Class, About Celebrex**

20.     At all relevant times Defendants have engaged in a concerted fraudulent and

deceptive effort to obtain Food and Drug Administration ("FDA") approval for Celebrex and to

reap the benefits of Celebrex's commercial success by misleading the public about Celebrex

through misrepresentations and omissions and other deceptive practices made to health care

providers and through direct to consumer advertising.

21.     On December 31, 1998 the United States Food and Drug Administration (the

"FDA") approved Celebrex as a new arthritis drug.  Following the FDA's approval of Celebrex,

Pharmacia manufactured the drug and co-marketed it with defendant Pfizer.  Pharmacia, Searle

and Pfizer were responsible for wrongful conduct detailed herein in the marketing, promoting

and selling of Celebrex and profited handsomely from its widespread success.

22.     Since it received FDA approval, Celebrex has generated more than $2 billion in

annual sales for Defendants mostly as a result of Defendants' aggressive marketing campaigns.

In the first quarter of 2001, Celebrex was the second most heavily advertised drug in the United

States and defendants spent more money advertising Celebrex than was spent to advertise Coca-

Cola.  As reported in Newsweek on May 25, 2001, "Celebrex commercials showed joyful

arthritis suffers practicing tai chi, strolling the beach and zipping along scenic roads on tandem

bicycles to the tune of Celebrate'".  In their aggressive advertising and promotional campaigns,

Defendants repeatedly portrayed Celebrex as safe and effective.  In particular, Defendants

repeatedly touted Celebrex's benefits over much cheaper pills and portrayed Celebrex as causing

fewer side effects, such as ulcers and cardiovascular problems, than other drugs, including aspirin.

23.    Based upon this marketing campaign, Celebrex became Pharmacia's biggest-selling drug, generating sales of more than $2.3 billion in the twelve months ended March 31, 2001.

24.    However, shortly after Celebrex was available on the market, Defendants began receiving more frequent reports of severe adverse events associated with the use of the drug. According to FDA reports, in the first three months that Celebrex was on the market, the drug was linked to 10 deaths and 11 cases of gastrointestinal hemorrhages. Those reports revealed that five of the 10 people who died suffered from gastrointestinal bleeding or ulcers associated with the use of Celebrex.

25.    At the same time that they were receiving these adverse reports concerning patients who were taking Celebrex, defendants were promoting Celebrex to health care providers and the pubic by representing that it caused fewer incidences of ulcer than other, cheaper arthritis drugs. Defendants also were misrepresenting the efficacy of Celebrex in the promotional material that they directed to the health care providers and to the public in order to increase demand for the expensive drug. Although the public did not know about Defendants' misrepresentations, Defendants repeatedly received letters from the FDA directing Defendants to stop misleading the public about Celebrex.

26.    On September 10, 1999, the FDA sent Defendant Searle (the predecessor to Pharmacia) a letter concerning its involvement in disseminating promotional materials for

7

Celebrex that "<u>contained unsubstantiated comparative claims, and misrepresented Celebrex's</u>

<u>safety profile</u>" (emphasis supplied).

27.     In a response to the FDA dated September 24, 1999, Defendants assured the FDA

that there would be no more improper promotional practices in connection with Celebrex.  But

the improper practices did not stop.

28.     On December 1, 1999 the FDA sent a letter to Searle (the precessor to

Pharmacia) again complaining about improper promotional claims.  Four months later, in a letter

dated April 20, 2000, the FDA explicitly cautioned Defendants that "<u>[the FDA is] concerned that</u>

<u>the activities described above demonstrate a continuing pattern and practice of violative behavior</u>

<u>that evince widespread corporate involvement and acquiescence with your employees' activities</u>.

Although we do not believe that we should interfere with, or comment on, a drug sponsor's

internal policies and procedures that are being instituted in response to <u>serious violations of the</u>

<u>laws, it appears that your actions have not been successful in bringing your promotional practices</u>

<u>into compliance with the law</u>."  (emphasis supplied).  The FDA then cautioned Defendants to

"cease distribution" of improper promotional material.

29.     Despite these stern warnings from the FDA, Defendants did not stop

misrepresenting the safety and efficacy of Celebrex.  As the FDA put it in a April 6, 2000 letter

to Searle, "<u>Notwithstanding your assurances, your representatives continue to engage in violative</u>

<u>promotional practices</u>."

30.     On November 14, 2000 the FDA informed Defendants that their television

advertisement for Celebrex was "<u>misleading because the totality of the images, the music, and</u>

<u>the audio statements that you present overstate the efficacy for Celebrex</u>." (emphasis supplied).

According to the FDA, Defendants' advertisement improperly "suggest[s] that Celebrex is more effective than has been demonstrated by substantial evidence." In addition, the FDA criticized Defendants' advertising for Celebrex as "misleading because the audio statement, 'Celebrate, Celebrate Do What You Like To Do' makes a representation or suggestion about the efficacy of Celebrex".

31.     As a result of Defendants' misleading claims about Celebrex, the FDA directed Defendants to "immediately cease distribution of these violative broadcast TV advertisements and other similar promotional materials for Celebrex." (emphasis supplied). Instead of stopping their misleading practices, Defendants once again flouted the FDA's directive and continued to disseminate false and misleading promotional materials for Celebrex.

32.     On February 1, 2001, in yet another attempt to stop Defendants from misleading consumers, the Director of the FDA's Division of Drug Marketing faxed a letter directly to Fred Hassan, the President and CEO of defendant Pharmacia. At the top of the letter, in bold types and all capital letters the FDA wrote "WARNING LETTER" . That Warning Letter informed Mr. Hassan that the FDA had reviewed Defendants' "promotional activities and materials for the marketing of Celebrex (celecoxib) capsules" and "has concluded that they are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug and Cosmetic Act and Applicable Regulations." (emphasis supplied). The FDA also criticized Defendants for repeatedly failing to prevent improper promotional activities for Celebrex: "Despite your assurances, however, your violative promotion of Celebrex has continued." (emphasis supplied).

33.     In the Warning Letter, the FDA explained that defendants' promotional activities repeatedly:

9

(a)   "Fail[ed] to present other serious and important risks associated with Celebrex therapy";

(b)   "Fail[ed] to present the gastrointestinal (GI) warning for Celebrex about the possibility of serious GI toxicity such as bleeding, ulceration or perforation";

(c)   Failed to present "Celebrex's most common adverse events";

(d)   "[Made] several unsubstantiated comparative claims throughout [the] presentations";

(e)   Misled the public by claiming that "Celebrex is the 'non-steroidal of choice' when compared to the entire class of NSAIDs [Non-Steroidal Anti-Inflammatory Drugs]";

(f)   Misled the public by falsely claiming "that Celebrex is safer, or has fewer side effects than Vioxx [a competitor's drug]."  The FDA told defendants that their "suggestion that Celebrex is safer or has few side effects than Vioxx is false or misleading because such conclusions have not been demonstrated by substantial evidence."

(g)   Falsely claimed Celebrex's superior efficacy to Naprosyn, a competing drug.

34.   In the Warning Letter, the FDA described defendants' claims about Celebrex as "false or misleading" (emphasis supplied) and concluded by noting that defendants' "promotional activities described above raise significant health and safety concerns in that they minimize crucial risk information and promote Celebrex for unapproved new uses." (emphasis

10

supplied). In addition, the FDA noted that "despite our prior written notification, <u>Pharmacia has</u> <u>continued to engage in false or misleading promotion of Celebrex</u>." (emphasis supplied).

35.     On August 22, 2001, an article in <u>The Wall Street Journal</u> revealed to the consumer public for the first time that defendants had repeatedly misled the FDA, the editors of the Journal of the American Medical Association ("JAMA") and the public about the safety and efficacy of Celebrex. In particular, <u>The Wall Street Journal </u>article reported that "a study last year purporting to prove Celebrex's milder effects on the stomach than older remedies now appears exaggerated, because investigators for Pharmacia Corp., which is Celebrex's manufacturer and co-maker with Pfizer, Inc., didn't publish half of the study data". Instead, Defendants had a half year of Celebrex data beyond what they published in the study and the full, twelve-month trial <u>showed worse results regarding ulcers than did the six months of data that defendants provided to</u> <u>JAMA</u>. As reported by <u>The Wall Street Journal</u>, when the full set of data is crunched, "Celebrex works no better at avoiding ulcers than generic pills costing pennies a day", compared to Celebrex which costs $3 a day.

36.     This was particularly striking because, as <u>The Wall Street Journal</u> reported on August 22, 2001, Celebrex "caught on because doctors and patients believed [Celebrex was] less likely to cause gastrointestinal problems."

37.     That day, August 22, 2001, the <u>Journal of the American Medical Association</u> published a new study that was based on Defendants' own data and on past studies and concluded that Celebrex appeared to be associated with a relatively high risk of heart attacks. In addition, the JAMA study data did not support any reduction in ulcer risk as Defendants had repeatedly claimed in their promotional materials.

11

38.     One doctor who was quoted in <u>The Wall Street Journal</u> article, Dr. Sharon Levine

at Permanente Medical Group at Kaiser Permanente, aptly noted that because of Defendants'

misrepresentations and deceptive practices "consumers are paying millions and millions for

drugs that, for most of them, appear to have no clinical benefit" over much cheaper pills.

39.     As a result of Defendants' misleading marketing and promotional practices in

connection with selling Celebrex, Plaintiff and the other Class members who purchased Celebrex

based upon Defendants' improper practices have suffered millions of dollars of economic

damages and other injury.

### COUNT I

**New Jersey Consumer Fraud Act**

40.     Plaintiff realleges and incorporates by reference the allegations set forth above.

41.     Each Defendant, including Pharmacia, Pfizer and the Jane/John Does Defendants,

in their capacities as Celebrex manufacturers, distributors, marketers and sellers of Celebrex is a

"person" for the purposes of the Consumer Fraud Act, as codified in <u>N.J.S.A.</u> 56:8-1, *et seq*.

42.     Plaintiff and the other members of the Class purchased and used Celebrex for

personal use and suffered ascertainable loss as a result of Defendants' actions in violation of the

Consumer Fraud Act.

43.     Prescription drugs are "merchandise" as defined in <u>N.J.S.A.</u> 56:8-1(c).

44.     Defendants violated the Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, *et seq*., as follows:

12

(a)    Defendants engaged in unconscionable commercial practices, through deception, fraud, and making false promises and misrepresentations, including, but not limited to, the following:

(1)    Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Celebrex, including, but not limited to, the risks of serious damage from ulcers and/or cardiovascular problems.  Furthermore, Defendants have purposefully downplayed and/or understated the serious nature of the risks associated Celebrex;

(2)    Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Celebrex;

(3)    Defendants knew or should have known, and would have known, had appropriate testing been done, that the use of Celebrex caused serious side effects including ulcers, especially when used for extended periods of time;

(4)    Defendants engaged in calculated silence despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of Celebrex, and did so because the prospect of huge future profits outweighed health and safety issues, all to the detriment of Plaintiff and the other members of the Class;

(5)    Defendants purposefully downplayed the side effects or provided misinformation about adverse reactions and potential harms from Celebrex, and succeeded in persuading large segments of the medical community to prescribe

13

Celebrex despite both a lack of efficacy and the significant dangers as set forth herein;

(6)     Defendants had a clear post-manufacture duty to warn which arose when they knew, or with reasonable care should have known, that Celebrex was injurious.

45.   Defendants breached their duty of care, constituting negligence, as follows:

(a)     Defendants failed to conduct adequate testing of the drug;

(b)     Defendants failed to properly monitor and evaluate the drug's effect;

(c)     Defendants concealed the clinical experience of the drug from the medical community, which included the medical personnel treating Plaintiff and the other members of the Class;

(d)     Each Defendant failed to fulfill the standard of care required of a reasonable, prudent pharmaceutical company engaged in the manufacture, distribution, promotion and sale of a drug intended specifically for use by individuals suffering from arthritis and other ailments;

(e)     Each Defendant failed to adequately warn of the dangers which it knew or should have known that the drug posed;

(f)     Defendants failed to report adverse results of tests to the FDA, as required by law;

(g)     Defendants placed the drug in commerce for sale and recommended its use without adequately warning users of risks associated with the use of the drug;

14

(h)     Defendants failed to properly market, advertise or distribute the drug, an inherently dangerous product, when they knew or should have known, that there existed danger to users of Celebrex arising from the foreseeable and recommended use of the product;

(i)     Defendants failed to disclose to the public, to the Class and to the Plaintiff, facts relative to the drug being unsafe and a cause of dangerous side effects or complications;

(j)     Defendants failed to heed or further investigate adverse reaction reports submitted by the medical community in order to determine whether the drug should be withdrawn from the market.

46.     Defendants' actions as set forth herein constitute knowing omission, suppression, or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Celebrex in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq*.

47.     Such unconscionable commercial practices make defendants liable to Plaintiff and the Class under N.J.S.A. 56:8-2, which provides that "[a]ny person violating the provisions of the act shall be liable for a refund of all moneys acquired by means of any practice declared to be unlawful."

48.     As a proximate result of these violations of the Consumer Fraud Act, Plaintiff and the Class suffered ascertainable economic loss, including the purchase price of the drugs, out-pocket costs of medical tests and treatment, future medical care and/or services, and other costs.

15

49. As a direct and proximate result of using Celebrex, Plaintiff and the other members of the Class suffered economic loss in an amount to be established at trial.

50. Defendants are further liable to Plaintiff and the Class for treble damages under N.J.S.A. 56:8-13, 19.

51. Plaintiff and the Class are also entitled to recover attorney's fees and costs, as well as treble damages, from defendants jointly and severally under N.J.S.A. 56:8-19.

WHEREFORE, Plaintiff and the Class respectfully request that they be granted relief against Defendants jointly and severally, as contained in the Prayer For Relief.

## COUNT II

### Fraud and Misrepresentation

52. Plaintiff repeats and realleges the allegations set forth above.

53. Defendants failed to publish adequate precautionary statements warning consumers as more information above adverse reactions became available. Defendants continued to design, manufacture and market the product and fervently promote the beneficial and safe use of the drug.

54. The product warnings in effect were inadequate to alert consumers to actual risks associated with this drug that were then known to Defendants.

55. Plaintiff and the Class purchased and used Celebrex in reliance upon the express and implied representations of material facts made by Defendants and their agents directly and indirectly through uniform advertisements, sales literature and other forms of marketing.

56. Plaintiff and the Class decided to use Celebrex reasonably relying on Defendants and their agents to disclose known defects and side effects of the drug. Defendants'

16

misrepresentations, omissions and concealment of material facts were made to induce Class members to rely upon them and purchase and use Celebrex.

57.   Defendants knew or recklessly disregarded the fact that their statements regarding Celebrex were false, misleading, incomplete, and/or untrue when made.

58.   The uniform misrepresentations, misleading statements, material omissions, and the fraudulent concealment of material facts by Defendants or their agents were made with the intention to deceive and defraud or to conceal the truth about the safety and efficacy of Celebrex.

59.   Defendants' uniform misrepresentations, misleading statements, material omissions, and fraudulent concealment of material facts concerning Celebrex were made to induce the purchase and use of Celebrex by Plaintiff and the Class in order to increase Defendants' sales and profits.

60.   Plaintiff and the Class had no knowledge of the falsity or incompleteness of Defendants' statements and representations when they purchased the Celebrex that was manufactured, marketed, distributed, and sold by defendants or their agents.

61.   Plaintiff and the Class had a right to and did rely on Defendants' uniform statements and representations.  Defendants' uniform statements and representations, express or implied, concerning the safety and effectiveness of Celebrex were material to the decision to purchase and use that drug, in that Class members would not have purchased and used the drug if they had known that such statements and representations of Defendants were false, misleading, incomplete, and untrue.

62.   At all times, Defendants failed to disclose adequately material adverse information regarding the dangerous side effects of Celebrex, as alleged above.

17

63.    Defendants were under a duty to disclose the defective and unsafe nature of Celebrex to consumers such as Plaintiff and the Class.  Defendants had sole access to material facts concerning the defective nature of Celebrex and Defendants knew that consumers could not have reasonably discovered the defects or Defendants misrepresentations or omissions.

64.    Defendants' omissions were made deliberately, willfully and maliciously to mislead consumers into purchasing and using Celebrex and believing that the drug was safe and not defective.

65.    Class members had no way to determine that Defendants were making these material misrepresentations or fraudulently concealing material facts.  Had Defendants disclosed the material information regarding the unsafe and defective nature of Celebrex, Plaintiff and Class members would have been aware of the defect and would not have purchased and used the drug or continued to believe that the drug was fit for its intended purpose.

66.    By reason of Defendants' fraudulent concealment, material misrepresentations, misleading statements, and/or material omissions, Plaintiff and the other Class members have been damaged in an amount to be established at trial.

67.    Because Defendants' conduct in perpetrating the fraud described above was malicious, willful, wanton, and oppressive, or in reckless disregard of the rights of the Class, the imposition of punitive damages against Defendants is warranted.

WHEREFORE, Plaintiff and the Class respectfully request that they be granted relief against Defendants jointly and severally, as contained in the Prayer For Relief.

## COUNT III

### Breach of Warranty

18

68. Plaintiff repeats and realleges each allegation above.

69. Through their public statements about Celebrex, their descriptions of Celebrex and their promises relating to Celebrex, defendants expressly and impliedly warranted that Celebrex was both efficacious and safe for its intended use.

70. These warranties came in the form of (i) publicly made written and verbal assurances of safety and efficacy by defendants pursuant to and following FDA approval, including but not limited to statements of clinical data that purported to report the safety and efficacy of Celebrex as well as the incidence of adverse experiences with Celebrex, but which in fact grossly understated such incidence; (ii) press releases, interviews, and dissemination via the media of uniform promotional information that was intended to create demand for Celebrex, but which contained material misrepresentations and utterly failed to warn of the risks of Celebrex; (iii) verbal assurances made by defendants' sales force to prescribing physicians and the public about the safety and efficacy of Celebrex and the downplaying of the risks associated with Celebrex; (iv) false and misleading written information supplied by Defendants.

71. Plaintiff further alleges that all of the aforementioned written materials are known to Defendants and in their possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendants and be made of record once Plaintiff has afforded the opportunity to conduct discovery.

72. When Defendants made these express and implied warranties, Defendants knew the purpose for which Celebrex was to be used and warranted it to be in all respects safe, effective and proper for such purpose.

19

73.     Defendants themselves drafted the documents and/or made the statements upon which these warranty claims are based, and in so doing, defined the terms of those warranties.

74.     Celebrex does not conform to Defendants' representations in that Celebrex is not safe and produces serious side effects, including ulcers and cardiac injury.

75.     As such, Celebrex did not conform to Defendants' promises, descriptions or affirmations of fact and was not adequately packaged, labeled, promoted or fit for the ordinary purposes for which such drugs are used.

76.     Defendants therefore breached their warranties to Plaintiff in violation of N.J.S.A. 12A:2-313, codifying the Uniform Commercial Code: (i) by manufacturing, marketing, packaging, labeling, and selling Celebrex to consumers, such as Plaintiff and the Class, in a way that misstated the risk of injury, without warning of or disclosing that risk and/or without modifying or excluding the applicable warranties; (ii) by manufacturing, marketing, packaging, labeling, and selling Celebrex to Plaintiff and the Class and causing damages as well be established at trial.

WHEREFORE, Plaintiff and the Class respectfully request that they be granted relief against Defendants jointly and severally, as contained in the Prayer For Relief.

## COUNT IV

### Negligence and Negligent Misrepresentation

77.     Plaintiff repeats and realleges each and every allegation above.

78.     Defendants owed a duty to consumers of Celebrex to use reasonable care in designing, manufacturing, promoting, supplying, and selling Celebrex and to disseminate truthful information about Celebrex.

20

79.   Defendants breached their duty of care, constituting negligence, as follows:

(a)   Omitting and misrepresenting material facts about the safety and efficacy of Celebrex and, as a result, artificially inflating the price that Plaintiff and the Class paid for Celebrex;

(b)   Defendants failed to properly monitor and evaluate the drug's safety and efficacy;

(c)   Defendants concealed the clinical experience of the drug;

(d)   Defendants failed to fulfill the standard of care required of a reasonable, prudent pharmaceutical company engaged in the manufacture of a drug intended specifically for use by individuals suffering from arthritis;

(e)   Defendants failed to adequately warn of the dangers which it knew or should have known that the drug posed;

(f)   Defendants failed to report adverse results of tests to the FDA, as required by law;

(g)   Defendants placed the drug in commerce for sale and recommended its use without adequately warning of risks associated with the use of the drug;

(h)   Defendants failed to properly market, advertise or distribute the drug, an inherently dangerous product, when they knew or should have known, that there existed dangers to users of Celebrex arising from the foreseeable and recommended use of the product;

(i)   Defendants failed to disclose to consumers facts relative to the drug being unsafe and a cause of dangerous side effects or complications;

21

(j)     Defendants failed to heed or further investigate adverse reaction reports submitted by the medical community in order to determine whether the drug should be withdrawn from the market.

80.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class have been damaged in an amount to be established at trial.

81.     Defendants have, at all times material hereto, manufactured, promoted, sold, and distributed the drug in a manner which constituted gross, willful, malicious, reckless, and outrageous disregard for the consequences of their actions and omissions, including the criminal and culpable disregard for the consequences of their actions and omissions on consumers such as Plaintiff and the Class.

82.     Defendants had a duty to exercise reasonable care in the manufacture, sale, promotion, and/or distribution of Celebrex including a duty to:

(a)     make truthful statements about Celebrex and its safety and efficacy;

(b)     correct omissions and misrepresentations of material fact concerning Celebrex and its safety and efficacy;

(c)     warn consumers of dangerous side effects; and

(d)     disclose adverse material facts when making representations of facts.

83.     Defendants failed to exercise reasonable care in the manufacture, sale, promotion and/or distribution of Celebrex into the stream of commerce because defendants knew or should have known that they had omitted and misrepresented material facts concerning the drug and knew or should have known that the use of Celebrex created a high risk of unreasonable, dangerous side effects, including side effects such as ulcers and heart failure.

22

84.     Defendants breached their duty of reasonable care and duty to disclose material adverse facts to Plaintiff by failing to use reasonable care in the design, manufacture, promotion and sale of Celebrex; failing to provide sufficient accompanying warnings and/or indications concerning Celebrex and its health effects; failing to conduct adequate testing; and failing to ensure that Celebrex was used only in a manner for which it had been approved and which was safe.

85.     Although Defendants knew or should have known that Celebrex caused unreasonable, dangerous side effects, defendants continued to market and promote Celebrex unlawfully.

86.     Defendants knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care as described above.

87.     Defendants intended that Plaintiff and the Class would rely upon their representations and statements and would rely on Defendants and their agents to inform them truthfully, accurately and fully about Celebrex.

88.     At the time of defendants' misrepresentations, misleading statements and/or omissions about Celebrex, Plaintiff and the Class were ignorant of their falsity. Plaintiff and the Class relied upon Defendants' superior knowledge and expertise and, justifiably, relied, to their detriment, on Defendants' representations and statements. Had Plaintiff and the Class been aware of the true facts, they would not have purchased or used Celebrex.

23

89.     By virtue of Defendants' negligence and negligent misrepresentations, Defendants have directly, foreseeably and proximately damaged Plaintiff and the Class in an amount to be established at trial.

90.     Defendants' actions as described above constitute knowing omission, suppression or concealment of material facts made with the intent that others would rely upon that concealment, suppression or omission.

91.     As a result, the imposition of punitive damages against Defendants is warranted.

## COUNT V

### Unjust Enrichment And Restitution

92.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges as follows:

93.     As a result of their improper acts set forth in this Complaint, Defendants have realized billions of dollars in sales of Celebrex to consumers, including Plaintiff and members of the Plaintiff Class.

94.     Plaintiff and the other Class members would not have purchased Celebrex had they been adequately informed by Defendants or warned of the potential adverse health risks from Celebrex.

95.     If Plaintiff proves the allegations of inadequate and untruthful product safety labeling, Defendants would stand to be unjustly enriched if they were permitted to retain their ill-gotten gain.  Therefore, the ill-gotten gains should be refunded to Plaintiff and members of the Class.

24

96.     As a result of Defendants' acts described above, Plaintiff and the other members of the Class have suffered ascertainable loss - economic loss that includes the purchase price of the products- for which Defendants are liable to Plaintiff and the Class, plus attorneys' fees and costs.

WHEREFORE, Plaintiff and the Class respectfully request that they be granted relief against Defendants jointly and severally, as contained in the Prayer For Relief herein.

## PRAYER FOR RELIEF

1.     That this action be certified as a Class action on behalf of the proposed class of New Jersey consumers who have purchased Celebrex, that the named plaintiff be designated as representative of the Class, and that named counsel be designed as Class counsel;

2.     That Plaintiff and the Class have and recover compensatory damages under the New Jersey Consumer Fraud Act of Defendants jointly and severally, and that these damages be trebled, and that Plaintiff and the Class have and recover a reasonable attorney's fee and costs pursuant to the New Jersey Fraud Act under Count I of this Complaint;

4.     That Plaintiff and the Class have and recover compensatory and punitive damages resulting from Defendants' fraud and misrepresentation under Count II of this Complaint;

5.     That Plaintiff and the Class have and recover compensatory damages resulting from Defendants' breach of warranty under Count III of this Complaint;

6.     That Plaintiff and the Class have and recover compensatory and punitive damages resulting from Defendants' negligence and negligent misrepresentation under Count IV of this Complaint;

7.     That Plaintiff and the Class have and recover economic damages for unjust

enrichment and restitution under Count V of this Complaint;

8.     For a jury trial on all issues so triable;

9.     That the costs of this action be taxed to defendants;

10.    For such other and further relief as to this Court deems just, fair and reasonable.


Dated: August 23, 2001

SQUITIERI & FEARON, LLP

By:_____
Olimpio Lee Squitieri
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

JOSEPH R. SANTOLI
Joseph R. Santoli
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

KENNETH A. WEXLER AND
ASSOCIATES
Kenneth A. Wexler
One North LaSalle Street
Suit 2000
Chicago, Illinois 60602
(312) 346-2222

HOFFMAN & EDELSON LLC
Marc Edelson
45 West Court Street
Doylestown, PA 18901
(215) 230-8043

Attorneys for Plaintiff and the Class

26

## <u>CERTIFICATION PURSUANT TO R. 4:5-1</u>

The undersigned hereby certifies the following:

That, to the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is there any such proceeding contemplated at this time by the Plaintiff. That, to the best of my knowledge and belief, there are no other parties who must be joined in this action.

Dated: August 23, 2001

SQUITIERI & FEARON, LLP

By:_____

    Olimpio Lee Squitieri
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

JOSEPH R. SANTOLI
Joseph R. Santoli
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

KENNETH A. WEXLER AND
ASSOCIATES
Kenneth A. Wexler
One North LaSalle Street
Suit 2000
Chicago, Illinois 60602
(312) 346-2222

27

HOFFMAN & EDELSON LLC
Marc Edelson
45 West Court Street
Doylestown, PA 18901
(215) 230-8043

Attorneys for Plaintiff and the Class

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that the Plaintiff demands trial by jury as to all issues in the

above matter.

Dated: August 23, 2001

SQUITIERI & FEARON, LLP

By: _____
Olimpio Lee Squitieri
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

JOSEPH R. SANTOLI
Joseph R. Santoli
615 Franklin Turnpike
Ridgewood, New Jersey 07450
(201) 444-2888

28

KENNETH A. WEXLER AND
ASSOCIATES
Kenneth A. Wexler
One North LaSalle Street
Suit 2000
Chicago, Illinois 60602
(312) 346-2222

HOFFMAN & EDELSON LLC
Marc Edelson
45 West Court Street
Doylestown, PA 18901
(215) 230-8043

Attorneys for Plaintiff and the Class

29