June 8, 2018

**ELECTRONICALLY FILED VIA ECF**

The Honorable Michael A. Hammer
Magistrate Judge
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    *Pharmacia Corporation v Arch Specialty Insurance Company, et al.*
               **Civil Action No. 18-cv-510 (ES) (MAH)**

Dear Judge Hammer:

      We represent defendants Arch Specialty Insurance Company ("Arch") and Twin City Fire Insurance Company ("Twin City") in the above-referenced action. Pursuant to paragraph 2 of the parties' proposed Pretrial Scheduling Order (Dkt. No. 52), Arch and Twin City submit this joint letter memorandum in support of their request for the production of all settlement agreements executed by Pfizer Inc. ("Pfizer"), for itself or on behalf of Pharmacia Corporation ("Pharmacia"), and Pharmacia's 2002-2003 directors and officers liability ("D&O") insurers in connection with the action captioned *Garber v. Pharmacia Corp., et al.*, Civil Action No. 03-cv-1519 (D.N.J.), later consolidated and captioned *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*, Civil Action No. 03-cv-1519 (D.N.J.) (the "Garber Action").

      As explained below, those settlement agreements are directly relevant to one of Arch and Twin City's central defenses in this action and the information contained in those agreements cannot be obtained from any other source. Accordingly, and because a Consent Discovery Confidentiality Order otherwise protects the settlement agreements from further disclosure, (Dkt. No. 53), this Court should grant Arch and Twin City's request.

**I.    Background**

      This dispute is about whether insurance coverage is available under the excess D&O policies that Arch and Twin City issued to Pharmacia for the policy period September 1, 2002 to September 1, 2003, for amounts that Pfizer allegedly incurred in connection with its defense and settlement of the Garber Action. Pharmacia purchased multiple layers of D&O insurance for that 2002-2003 policy period, and the Arch and Twin City policies are the seventh- and eighth-layer excess policies in the insurance tower, respectively. *See* Complaint (Dkt. No. 1) ¶¶ 17, 22 and Exs. B (the "Arch Policy") and C (the "Twin City Policy") (collectively, the "Excess Policies").

      Since the Arch and Twin City Policies are excess insurance policies, coverage under those Excess Policies is only triggered, and the insurers' contractual obligations only attach, when the underlying policy limits have been properly exhausted according to each Excess Policy's specific terms. The parties refer to this as the "Attachment/Exhaustion Issue," and it is

1

one of several potentially dispositive coverage defenses that both Arch and Twin City have asserted. *See* Joint Discovery Plan (Dkt. No. 49). In this regard, the Arch Policy states:

> The insurance coverage afforded by this Policy shall apply only after exhaustion of the **Underlying Limit**[1] solely as a result of actual payment, in legal currency, under the **Underlying Insurance** in connection with **Claim(s)** and after the **Insureds** shall have paid the full amount of any applicable deductible or self insured retentions.

Arch Policy at Section I.B. The Twin City Policy states:

> It is expressly agreed that liability for any loss shall attach to the Underwriters [*i.e.,* Twin City] only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability ….

Twin City Policy at Section II.A.

Pfizer alleges that all of the D&O policies underlying the Arch and Twin City Policies "have been exhausted by full payment of policy limits." Complaint ¶ 43. Yet, whereas Pfizer believes that the Court can decide the Attachment/Exhaustion Issue based solely on proof of these payments, Arch and Twin City maintain that their specific Policy provisions require the Court to consider the terms of the settlement agreements between Pfizer and the underlying insurers as well. Joint Discovery Plan (Dkt. No. 49) at 5-6. For this reason, Arch and Twin City are seeking production of those settlement agreements in this coverage litigation. Specifically, Twin City seeks:

> All written settlement agreements between Pfizer, on the one hand, and one or more insurance companies that issued the Underlying Insurance, on the other hand, describing any payment and/or release under the Underlying Insurance in connection with the Garber Action.

Defendant Twin City Fire Insurance Company's First Set of Requests for Production to Plaintiff (Apr. 30, 2018), No. 1. Pfizer has refused to produce these settlement agreements, stating that they are not relevant and, in any event, confidential.[2]

## II.     Legal Standards

According to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" in the action. Evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would

---

[1] All capitalized and bolded terms not otherwise defined herein are defined in the Excess Policies or the primary D&O policy issued by National Union Fire Insurance Company of Pittsburgh, PA. *See* Complaint, Ex. A.

[2] Arch has not yet served its initial written discovery demands, and will do so in accordance with the Pretrial Scheduling Order. Arch likewise intends to seek the copies of the settlement agreements.

be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

With respect to confidential settlement agreements, "[t]he mere fact that settling parties have agreed to maintain the confidentiality of their agreement does not automatically serve to shield the agreement from discovery." *In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, *1 (W.D. Pa. April 19, 2013) (quoting *Sippel Dev. Co. v. W. Sur. Co.*, CIVA 05-46, 2007 WL 1115207 (W.D. Pa. Apr. 13, 2007)). Nonetheless, and "[b]ecause public policy favors the settlement of disputes, courts have imposed on the party seeking discovery of a confidential settlement agreement the burden to make a particularized showing that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence." *Id.* (citing *Key Pharmaceuticals, Inc. v. ESI–Lederle, Inc.,* No. 96–1219, 1997 WL 560131, *2 (E.D. Pa. Aug. 29, 1997) (internal quotation marks omitted)). This longstanding rule is based on Federal Rule of Evidence 408, "which makes settlement agreements inadmissible under certain circumstances." *Id.* As Your Honor recently explained:

> This Court has "recognized the inherent tension between Fed. R. Evid. 408, which prohibits the use of settlement discussions to prove liability, and Rule 26, which permits liberal discovery." *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) (citing [*Lesal Interiors v. Resolution Trust Corp.*], 153 F.R.D. 552 (D.N.J. 1994)). The Third Circuit has not yet resolved this issue. *See Ford Motor Co.*, 257 F.R.D. at 424. Courts in this district, however, have attempted to reconcile "the two competing rationales behind the rules by requiring the moving party to make a 'particularized showing that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence.'" *Id.* at 423 (quoting *Lesal Interiors*, 153 F.R.D. at 562). The effect of this "is to switch the burden of proof from the party in opposition to the discovery to the party seeking the information." *Lesal Interiors*, 153 F.R.D. at 562 (quoting *Fid. Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993)) (internal quotation marks omitted). Thus, the party seeking discovery regarding settlement negotiations must make a particularized showing that there is a strong need for this information and that it cannot be gained otherwise. Once the Court is satisfied that the movant has met the particularized showing requirement, the Court must balance the movant's "asserted interest and need of the documents" against "the effects that may flow from their discovery." *Lesal Interiors*, 153 F.R.D. at 562.

*Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, No. CV 06-2996 (MCA), 2016 WL 10572481, at *2 n.3 (D.N.J. May 16, 2016) (Hammer, M. J.).

Applying these standards, this Court has ordered production of a confidential settlement agreement where its contents were "directly relevant" to a claim against the requesting party, the production was "neither overly burdensome nor duplicative," and the production would "promote fairness and efficiency among litigants by affording [the requesting party] an opportunity to assess the [claim against it] and build a defense." *Re Walter Nye v. Ingersoll-Rand Co.*, No. 08-3481 (DRD) (MAS), 2010 WL 11474107, at *5 (D.N.J. Mar. 9, 2010).

3

In contrast, courts have denied a party's motion to compel discovery of a confidential settlement agreement only where the requesting party failed to demonstrate the relevance of the agreement to its defense of a claim. *See, e.g., In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1. Similarly, courts have ordered that specific information contained in a confidential settlement agreement be redacted to the extent such information was not "necessary and/or relevant to defend against [a claim]" and of "minimal" benefit to the requesting party. *Re Walter Nye v. Ingersoll-Rand Co.*, 2010 WL 11474107, at *5.

### III.   Argument

As explained above, discovery of the settlement agreements first depends on whether Arch and Twin City can make a particularized showing that the terms of those agreements are directly relevant to one of their defenses against Pfizer's Complaint. *See, e.g., Deluxe Bldg. Sys.*, 2016 WL 10572481, at *2; *Re Walter Nye*, 2010 WL 11474107, at *5. In this regard, there can be no dispute that lack of proper exhaustion is a valid defense to coverage under the Excess Policies, or that several courts have strictly enforced exhaustion requirements that are substantively identical to those contained in the Excess Policies. *See, e.g.*, *Rapid-Am. Corp. v. Travelers Cas. & Sur. Co. (In re Rapid-Am. Corp.)*, 2016 Bankr. LEXIS 2224 (Bankr. S.D.N.Y. June 7, 2016); *Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013); *Forest Laboratories, Inc. v. Arch Ins. Co.*, 953 N.Y.S.2d 460 (Sup. Ct. 2012), *aff'd*, 984 N.Y.S.2d 361 (1st Dep't 2014). Thus, the initial question is whether Arch and Twin City can demonstrate that the terms of the settlement agreements are directly relevant to the Court's determination of whether the Excess Policies' exhaustion provisions have been satisfied.[3]

Arch and Twin City are at a disadvantage in this regard since they have not actually seen the terms of the settlement agreements at issue. However, as Your Honor has previously noted, "settlement agreements typically defin[e] the terms of resolution of the litigation and the metes and bounds of each party's rights under that settlement agreement." *Deluxe Bldg. Sys.*, 2016 WL 10572481, at *2. Accordingly, it is reasonable to expect that the settlement agreements at issue here define the terms by which Pfizer and the underlying insurers resolved their coverage disputes and the extent of their respective rights under those agreements. Such terms are relevant to the Court's interpretation of the exhaustion provisions quoted above for at least three reasons.[4]

*First,* each settlement agreement likely recites the amount the underlying insurer paid to settle its coverage dispute with Pfizer in connection with the Garber Action, and whether such payment exhausted the policy's limit. This information is directly relevant to Arch and Twin

---

[3] Pfizer may argue that the New York cases cited above are inapposite because, according to Pfizer, New Jersey law will govern this Court's interpretation of the Arch and Twin City Policies. *See* Plaintiff's Mem. of Law in Opp. to Arch's Mot. to Dismiss (Dkt. No. 45) at 16-23. However, Pfizer has also argued that any choice-of-law analysis is premature at this stage of the case because the relevant facts have not yet been developed. *See id.* at 15. In any event, Pfizer cannot point to any authority that would prevent this Court from comparing the information contained in the settlement agreements to the clear and unambiguous language of the Excess Policies' exhaustion provisions to determine whether the information sought by Arch and Twin City is relevant to their defense.

[4] To the extent Pfizer asserts that the settlement agreements do not contain one or more of these common terms, the Court should direct Pfizer to submit the agreements for *in camera* review.

4

City's exhaustion defense because both Excess Policies require full payment of the underlying policy limits. As quoted above, the Arch Policy requires exhaustion of the underlying policy limits "solely as a result of actual payment, in legal currency" and the Twin City Policy requires the primary and underlying excess insurers to pay "the full amount." Notwithstanding Pfizer's assurances, Arch and Twin City are entitled to review the settlement agreements themselves to confirm that the amounts paid by the underlying insurers actually exhausted the underlying policy limits.

*Second,* the settlement agreements likely recite which coverage dispute(s) Pfizer and the underlying insurers resolved, and under which specific insurance policies. This information is directly relevant to Arch and Twin City's exhaustion defense because both Excess Policies require payment *under* the underlying policies themselves. In this regard, the Arch Policy requires payment "under the Underlying Insurance" and the Twin City Policy requires each underlying insurer to pay its "respective liability" under the policy it issued. Arch and Twin City have reason to believe that Pfizer's settlement agreements with the underlying insurers may contain broad releases that potentially encompass matters other than the Garber Action, and that may impact other policies issued by the underlying insurers. Under those circumstances, while it might appear that the underlying insurer paid its full limit of liability because the payment amount is equal to the policy limits, it may be necessary to allocate the payment amount among different claims and different policies. For these reasons, Arch and Twin City are entitled to review the provisions of the settlement agreements to determine which claims and which policies are encompassed by the agreements. *See, e.g.*, *JP Morgan Chase & Co. v. Indian Harbor Ins. Co.*, 98 A.D.3d 18, 22, 947 N.Y.S.2d 17, 21 (2d Dep't 2012) (where settlement involves multiple insurance programs and the settlement agreement provided for no allocation of the settlement between those programs, court will not presume exhaustion of underlying policy).

*Third,* each settlement agreement likely recites whether the underlying insurer has duly admitted liability under its policy in connection with coverage for the Garber Action. This information is directly relevant to Twin City's exhaustion defense because, in addition to requiring full payment from the underlying insurers, the Twin City Policy requires each and every one of those insurers to have "duly admitted" its liability under the policy it issued. At least one court has enforced the exact same exhaustion language to hold that coverage was not available under an excess policy because the excess insurer immediately below it in the insurance tower did not admit liability when it settled with the insured. *JP Morgan Chase & Co. v. Indian Harbor Ins. Co.*, 98 A.D.3d at 22, 947 N.Y.S.2d at 20–21. Because this issue may be dispositive of coverage under the Twin City policy, it is critical that the actual underlying settlement agreements be produced.

Pfizer has stated that the settlement agreements are not necessary to prove that the underlying insurers paid their full policy limits (*i.e.,* the first point above). Whether or not this is true, there can be no dispute that those settlement agreements constitute the ***only*** admissible evidence about what claims and policies were included in each settlement and whether the underlying insurers admitted liability under their policies (*i.e.,* the second and third points). *See, e.g.*, *Weiss v. Phillips*, 157 A.D.3d 1, 24, 65 N.Y.S.3d 147 (1st Dep't 2017) (holding that unsigned transcript including "purported quotes of portions of the transcript of the alleged settlement agreement" was "clearly inadequate under the best evidence rule to establish the

contents of the settlement agreement"); *Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, No. 2:09-CV-1182 JCM PAL, 2012 WL 1970017, at *6-8 (D. Nev. June 1, 2012) (holding that 'settlement agreements themselves must be admitted to prove the contents of said agreements" and granting motion barring "secondary evidence to prove the contents and substance of" those agreements), *aff'd*, 595 F. App'x 670 (9th Cir. 2014). Accordingly, Arch and Twin City have a "strong need for th[e] information" contained in those settlement agreements because such information is central to their defense of lack of exhaustion and "cannot be gained otherwise." *Deluxe Bldg. Sys.*, 2016 WL 10572481, at *2.

Finally, discovery of the settlement agreements is appropriate because Arch and Twin City's "asserted interest and need" for those agreements clearly outweighs any "effects that may flow from their discovery." *Deluxe Bldg. Sys.*, 2016 WL 10572481, at *2 (quoting *Lesal Interiors*, 153 F.R.D. at 562). Unlike the requesting party in *Lesal Interiors*, Arch and Twin City are not seeking discovery into "currently ongoing settlement negotiations" that, if such discovery were allowed, would cause any potential deal to "self-destruct." *See* 153 F.R.D. at 563. On the contrary, all settlement negotiations between Pfizer and the underlying insurers have already concluded.

Perhaps more importantly, Pfizer has already publicly disclosed through its Complaint the identities of the underlying insurers and their respective limits of liability – all of which are listed in the Arch and Twin City Policies – and alleged that all of those insurers paid their full limits in connection with the Garber Action. Pfizer has not identified any other settlement terms that the underlying insurers would want to keep confidential, and although some of those insurers may step forward to oppose this request for production (*see* proposed Pretrial Scheduling Order ¶ 2), it is hard to imagine what their concerns would be.

If the Court does order production of the settlement agreements to Arch and Twin City, it can do so with specific instructions limiting the agreements' further disclosure and use pursuant to a Consent Discovery Confidentiality Order.[5] That Order, which is be based on the Court's sample form, limits disclosure of the settlement agreements to key entities and individuals involved in this litigation and prevents them from using those agreements for any purpose other than the prosecution or defense of this action. To the extent any party wants to use the agreements in support of a motion or other court filing, the Order will require that party to file the agreement under seal. Thus, the Order addresses any concerns that Pfizer and the underlying insurers may have about maintaining confidentiality.

## IV.   Conclusion

For the reasons set forth above, the Court should order Pfizer to produce the settlement agreements to Arch and Twin City so that the insurers can evaluate their potential defenses relating to the Attachment/Exhaustion Issue and, if warranted, include those defenses in an early dispositive motion.

---

[5] The parties have agreed on the terms of a Consent Discovery Confidentiality Order, which was filed separately on June 8, 2018. (Dkt. No. 53.)

Sincerely,


 /s/Andrew I. Hamelsky
WHITE & WILLIAMS, LLP
Andrew I. Hamelsky
Erica Kerstein (*pro hac vice*)
Elyor Pogorelskiy (*pro hac vice*)

*Counsel for Defendant*
*Arch Specialty Insurance Company*


 /s/Marianne May
CLYDE & CO US LLP
Marianne May
Timothy Sheehan
Douglas M. Mangel (*pro hac vice*)
Alexander R. Karam (*pro hac vice*)

*Counsel for Defendant*
*Twin City Fire Insurance Company*