June 28, 2018

**VIA ECF AND HAND DELIVERY**

Honorable Michael A. Hammer
United States Magistrate Judge, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      RE:    *Pharmacia Corp. n/k/a Pfizer Inc. v. Arch Specialty Insurance Co., et al.*,
              No. 2:18–cv–00510–ES–MAH (D.N.J.)

Dear Judge Hammer:

      Pursuant to paragraph 15 of the Pretrial Scheduling Order in this case (Dkt. No. 56) Plaintiff Pharmacia Corporation ("Pharmacia") n/k/a Pfizer Inc. ("Pfizer") submits this letter brief in response to Defendants'[1] request (Dkt. No. 54; "Defs. Ltr.") for an order compelling the production of confidential settlement agreements entered into between Pfizer and non-party insurance companies concerning those insurers' payments in connection with the underlying action at issue ("*Garber*"[2]). As discussed below, Defendants have failed to make the particularized showing required to overcome the presumption that such settlements be protected from disclosure, particularly given that they have already been provided with admissible proof of all *Garber*-related payments from the settling insurers showing the full payment of the insurers' policies' limits. Accordingly, the request should be denied.

**I.**     **RELEVANT BACKGROUND**

      The Defendants each sold an upper-level excess liability insurance policy covering the 2002-2003 policy period as part of a coverage program purchased by Pharmacia. With certain exceptions, all excess policies within Pharmacia's 2002-2003 coverage tower "follow form" to the coverage provided by the primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). That includes the seventh-layer excess Arch Policy which attaches at the $130 million layer and the eighth-layer excess Twin City Policy that attaches at $140 million. Dkt. No. 1 ¶¶ 18, 22. This action seeks insurance coverage for the portion of the $207 million in total costs Pfizer incurred in defending against and settling *Garber*—a shareholder securities suit filed in this court against Pharmacia and certain of its directors and officers—which is covered under the Defendants' Policies. *Id.* ¶¶ 31–36. National Union and all of the seven excess insurers that sold the coverage underlying Defendants' Policies paid their full policy limits totaling $130 million for *Garber*. *Id.* ¶¶ 20–21.[3] Defendants have denied coverage for *Garber* under their follow-form Policies on several improper grounds, including

---

[1] "Defendants" refers to Arch Specialty Insurance Company ("Arch") and Twin City Fire Insurance Company ("Twin City"). Pfizer originally filed this lawsuit against Arch, Twin City and Liberty Mutual Insurance Company ("Liberty"), but subsequently settled its dispute with Liberty. Dkt. No. 46.

[2] *Garber v. Pharmacia Corp.*, No. 03–cv–1519–AET (D.N.J.), later consolidated as *Alaska Electrical Pension Fund v. Pharmacia Corp.*, No. 03–cv–1519–AET (D.N.J.).

[3] Defendants' suggestion that Pfizer waived confidentiality of its settlement agreements by so-called "publicly disclos[ing] through its Complaint" that the underlying insurers paid their full policy limits (Defs. Ltr. at 6) does not warrant a response.

their claim that Pfizer failed to exhaust all underlying insurance as required under the attachment provisions of their Policies.[4]

As proof of underlying exhaustion, Pfizer has provided the Defendants with documentary evidence of each underlying insurer's "actual payment, in legal currency" of the underlying policy limits in connection with *Garber*, including checks, wire transfers and other documents. Those documents are contained in Exhibit A, which is attached hereto. These documents fully account for every payment, and show the exhaustion of each underlying policy limit in turn, whether or not the payments were made under a settlement agreement with the respective insurer. Despite that, Defendants seek production of confidential settlement agreements between Pfizer and certain insurers, as what amounts to additional proof of exhaustion, even though neither of their Policies says anything about requiring settlement agreements as the only sufficient evidence of exhaustion of underlying insurance.

## II.     ARGUMENT

To balance "broad" discovery under F.R.C.P. 26 with the strong interest in keeping settlements confidential (F.R.E. 408), the party seeking disclosure must make a "particularized showing" that there is a "strong need" for evidence sought that is both relevant and calculated to lead to the discovery of admissible evidence, and it cannot be otherwise obtained. *Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, No. 06–cv–2996–MCA, 2016 WL 10572481, at *2 n.3 (D.N.J. May 16, 2016) (Hammer, J.). "The effect of this 'is to switch the burden of proof from the party in opposition to the discovery to the party seeking the information.'" *Id.* (citation omitted). "[E]ven if plaintiff can make a 'particularized showing,' . . . before permitting discovery of the settlement documents, this court must go further and determine whether and to what extent this discovery will impact elsewise." *Lesal Interiors, Inc. v. Resolution Tr. Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994) ("This court must balance against plaintiff's asserted interest and need for the documents, the effects that may flow from their discovery.").

In light of the presumption against disclosure, courts have refused to order production of confidential settlement agreements or negotiations where the party failed to demonstrate, with particularity, the relevance of the agreement to the subject matter of the action or how it could lead to admissible evidence. *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) (Salas, J.) (precluding discovery of documents containing negotiation of language for confidential administrative consent order because the documents themselves were inadmissible to prove liability under F.R.E. 408 and also would "not lead to the discovery of admissible evidence."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 2:05–cv–02367–SRC–CLW, 2012 WL 4764589, at *6 (D.N.J. Oct. 5, 2012) (plaintiffs failed to make "particularized showing" to overcome presumption of confidentiality of settlement negotiations).

---

[4] The relevant portion of the attachment language in the Arch Policy provides that:
> The insurance coverage afforded by this Policy shall apply only after exhaustion of the Underlying Limit solely as a result of actual payment, in legal currency, under the Underlying Insurance in connection with Claim(s). . . .

Dkt. No. 1-2, § I(B).

The Twin City Policy's attachment language provides, in relevant part, that:
> It is expressly agreed that liability for any loss shall attach to [Twin City] only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability. . . .

Dkt. No. 1-3, § II(A).

Because Defendants already have been provided with documentation of the actual payments by the underlying insurers—whether or not a given insurer settled with Pfizer—production of Pfizer's confidential settlement agreements would be, at best, cumulative on the issue of exhaustion. That does not come close to establishing a need for disclosure sufficient to overcome the presumption against the production of confidential settlement materials under the New York law cited by Defendants. Moreover, if New Jersey law is applied to the coverage dispute, as a matter of longstanding New Jersey precedent, the amount paid by an underlying insurer is irrelevant to the exhaustion determination, which is based on the total liability incurred rather than the amount paid by the underlying insurer. Accordingly, the request to compel production of Pfizer's confidential settlement agreements should be denied in all respects.

A. **Because Exhaustion of Underlying Policy Limits and Attachment of the Defendants' Policies is Proven by Detailed Proof of Payment, Production of Pfizer's Confidential Settlement Agreements Would be Duplicative**

Pfizer agrees with Defendants that lack of exhaustion "is a valid defense to coverage under the Excess Policies," and that the New York case law cited by Defendants has "strictly enforced exhaustion requirements." Defs. Ltr. at 4. That statement, however, misses the point. The actual question with respect to that defense is whether the underlying insurers paid out their limits toward the claim at issue—not whether they did so pursuant to a confidential settlement agreement. Pfizer has provided Defendants with sufficient evidence of underlying exhaustion in the form of checks, wire transfers and other documentation that specifically shows the underlying insurers *themselves* paid their full policy limits for *Garber*. Defendants cannot dispute that these payments were made, nor do they dispute that these documents constitute the type of evidence used by courts *and* insurers to show payment of insurance policy limits. *See, e.g.*, *Breeze Acupuncture, P.C. v Allstate Ins. Co.*, 58 Misc. 3d 1217(A), at *3 (N.Y. Civ. Ct. Feb. 1, 2018) (unrebutted evidence of policy exhaustion established by copies of insurer's checks submitted prior to trial); *John Crane, Inc. v. Admiral Ins. Co.*, No. 04 CH 8266, 2009 WL 908576 (Ill. Cir. Mar. 10, 2009) ("Crane produced checks, wire transfers, and other supporting documents . . . to support the payment and allocation amounts"); *Mid–Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:06–cv–1576–D, 2009 WL 3074618, at *12 (N.D. Tex. Mar. 30, 2009) ("Mid–Continent exhausted the applicable limits of the Primary Policy by tendering a $1 million check to Sundown"); *Weyerhaeuser Co. v. Ins. Co. of State of Pa.*, No. C08–1037Z, 2009 WL 2461163, at *3 (W.D. Wash Aug. 10, 2009) (insurer submitted checks to show policy payment).

That documentation satisfies each of three facets of the attachment provisions on which the Defendants rely. First, it confirms "the amount the underlying insurer paid . . . and whether such payment exhausted the policy's limit" (Defs. Ltr. at 4). Indeed, the checks and wire transfers already in Defendants' possession are the "best evidence" (*id.* at 5) of the amounts *actually* paid, not settlement agreements which are evidence of what insurers *promised* to pay.

Second, the documentation provided to Defendants establishes that the payments were made in connection with *Garber*, and under the underlying policies. *Id.* For that reason, Defendants' reliance on *JP Morgan Chase & Co. v. Indian Harbor Insurance Co.*, 947 N.Y.S.2d 17 (App. Div. 2012) (Illinois law)—the only case they cite on this point—is misplaced. There, the policyholder settled with certain of its underlying carriers, and included as part of those settlements releases for additional, affiliated insurers' policies on the insured's other program years, and payment for claims other than the claim at issue. Because there was no allocation for the amounts paid by each insurer under the different policies for different claims in the settlement, the court held that the insured failed to show the full underlying policy limits at issue were exhausted. *Id.* at 20–21. In essence, *J.P. Morgan* stands not for the proposition of

3

producing settlement agreements to prove exhaustion, but only for the proposition that proof of exhaustion requires proof of allocation of payments to the given claim under the given policy. In contrast to *JP Morgan*, here, the checks and other documentation provided for every underlying insurer that settled with Pfizer (except AWAC) specifically show that (1) the exact amount of the insurer's policy limit was paid (2) under the insurer's 2002-2003 policy (3) for *Garber*.[5] Thus, even assuming that their Policy language requires this evidence, Defendants' contention that the settlement agreements are "the *only* admissible evidence" (Defs. Ltr. at 5) of these facts is false.[6]

B.  **Whether the Underlying Insurers Have "Duly Admitted Liability" is Also Demonstrated by Detailed Proof of Payment, and is Not a Component of Attachment Required by Applicable Law**

Twin City proffers an additional purported need for production of the settlement agreements, arguing that its coverage does not attach unless each underlying insurer has not only paid, but "duly admitted liability" for the *Garber* claim. Defs. Ltr. at 5. This argument too hinges *entirely* on Twin City's erroneous interpretation that the *JP Morgan* court would require production of confidential settlement agreements in such circumstances, because statements that the agreement was entered into without admission of liability would negate exhaustion, even if the underlying limits were fully paid. *JP Morgan* has never been cited by any court for this aspect of its ruling, and that New York court's view of how an Illinois court would decide the issue of whether an affirmative admission of liability by each underlying insurer is required before an excess insurer would have to pay has no relevance to this action.

First, if that were an accurate proposition of law, because some of Pfizer's underlying insurers paid their full policy limits for *Garber* without entering into any related agreement (settlement or otherwise) with Pfizer, Twin City already does not need the other insurers' settlement agreements. Presumably Twin City's position is that *all* underlying insurers must "duly admit liability" or Twin City does not have to pay. However, as Twin City knows, certain of the eight insurers underlying the Defendants' Policies paid their full limits for *Garber* without any settlement agreement. The fact that every other excess insurer on the tower has similar attachment language and paid its full limits totaling $130 million reflects that they duly admitted liability, even if they inserted some platitude in a settlement agreement regarding an admission of liability. The required admission of liability is satisfied by the payments themselves.

Second, *JP Morgan* did not decide the issue here: whether the excess insurers' purported reasons for discovery of settlement agreements overcame the statutory presumption in favor of maintaining their confidentiality.[7] That is a crucial distinction, because *JP Morgan*'s ruling that statements in a settlement agreement can be used to show non-liability for a claim violates the express purpose *against* disclosing settlement communications in the first place. Rule 408 "bars

---

[5] *See, e.g.*, Exhibit A (CNA: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AWAC's letter in opposition (Exhibit B) confirms its wire transfer paid its 2002-2003 policy limit for *Garber*.

[6] Insurance company "loss runs," which Defendants have not sought, also provide evidence of policy payments for specific claims, and are routinely admitted to prove exhaustion. *See Mine Safety Appliances Co. v. AIU Ins. Co.*, 2015 WL 5829461, at *12 (Del. Super. Aug. 10, 2015).

[7] Based on a review of the filings in *JP Morgan* and discussion with insured's counsel in that case, the insured, for whatever reason, produced its settlement agreements with its insurers without seeking protection under NY CPLR 4547, which tracks the language of F.R.E. 408.

evidence of settlement and compromise for the purposes of proving liability or amount of damages" on behalf of *any* party to the agreement, including third-parties to the litigation. *E. Allen Reeves, Inc. v. Michael Graves & Assocs., Inc.*, No. 10–cv–1393–MAS–TJB, 2015 WL 105825, at *3 (D.N.J. Jan. 7, 2015) (granting request to "bar evidence of Defendants' third-party settlement," because "admission of the Settlement Agreement might tend to suggest fault on the part of the [third-party] and would contravene the policies undergirding Rule 408."). This bar includes evidence for the purposes of showing liability *and non-liability* alike. *See, e.g.*, *In re Woolard,* 269 B.R. 748, 752 (Bankr. S.D. Ohio 2001) ("The purpose of Rule 408 is to encourage 'nonlitigious solutions to disputes.'. . . To achieve this objection, statements made during settlement negotiations may not be offered as evidence of liability or the absence of liability.").[8]

Because Twin City thus could not use the settlement agreements to establish admission or non-admission of liability, its demand for the agreements is not reasonably calculated to lead to the discovery of admissible evidence, much less meets the standards to carry its burden of making a "particularized showing" that there is a strong need for these agreements.

**C.    There is No Even Arguable Basis to Seek the Settlement Agreements under Applicable New Jersey Law**

Defendants suggest that Pfizer will argue for the application of New Jersey law in order to avoid the import of New York cases cited in their letter brief. Defs. Ltr. at 4 n.3. In fact, even if New York law applied here, Defendants' cases will not support their request for production, because not a single one held that confidential settlement agreements with underlying insurers were necessary to prove, or were the only evidence relevant to, proper exhaustion of underlying policy limits for excess coverage attachment, let alone ordered their production. Rather, they stand for the proposition that where the insured settled with underlying carriers for *less than full policy limits*, the insured was not allowed to pay the difference to reach the excess carrier's attachment point; the full limit had to be paid by the underlying insurer.[9] Here, the underlying insurers paid their full policy limits. Pfizer is unaware of *any* court under *any* state law ordering the disclosure of third-party, confidential settlement agreements with insurers to show exhaustion of underlying policy limits where the insured already provided the necessary (and industry accepted) evidence showing full underlying exhaustion.[10]

Nonetheless, New Jersey law does apply here,[11] and applying that law, New Jersey courts have *expressly* refused to order the production of confidential settlement agreements with settling

---

[8] *See also In re Portnoy*, 201 B.R. 685, 691 (Bankr. S.D.N.Y. 1996) ("statements made during the course of a settlement negotiation may not be introduced as evidence of liability *or the absence of liability* on an underlying claim.") (emphasis added).

[9] *In re Rapid-Am. Corp.*, No. 13–cv–10687–SMB, 2016 WL 3292355, at *11 (Bankr. S.D.N.Y. June 7, 2016); *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 92 (2d Cir. 2013); *Forest Labs., Inc. v. Arch Ins. Co.*, 953 N.Y.S.2d 460, 466 (Sup. Ct. 2012), *aff'd*, 984 N.Y.S.2d 361 (App. Div. 2014).

[10] Defendants' citation to *Re: Walter Nye v. Ingersoll-Rand Co.*, No. 08–3481–DRD–MAS, 2010 WL 11474107 (D.N.J. Mar. 9, 2010) provides no support for disclosure here. In *Nye*, the court held the settlement agreement was "directly relevant" and ordered its partial disclosure to allow plaintiff "to assess [the claim against it] and build a defense" (Defs. Ltr. at 3) because defendant brought a counterclaim against plaintiff for tortiously interfering *with that settlement agreement*.

[11] Under Restatement (Second) of Conflict of Laws §§ 186, 193 and 6, and for the reasons stated in Pfizer's opposition to Arch's motion to dismiss (Dkt. No. 45 at 16–23), the law of New Jersey governs Defendants' Policies, as it has the "most significant relationship" to the coverage claim:

5

carriers, even for the proposition for which Defendants cite their inapposite New York cases. New Jersey follows the rule set forth in *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928) and its progeny that an excess policy attaches even if the insured settles the underlying insurance for less than full underlying policy limits, as long as the insured incurs covered damages above the excess policy's attachment point. *See, e.g.*, *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 227–228 (3d Cir. 1999) (under New Jersey law, settlement with primary insurer is deemed to exhaust primary coverage even in event of under limits settlement) (relying on *UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*, 276 N.J. Super. 52 (Law Div. 1994)). As a result, in *UMC*, the court specifically denied an excess insurer's request for production of the insured's confidential settlements with its other insurers, holding that those settlements were irrelevant to the issue of underlying exhaustion:

> Allstate believes it is entitled to know the terms of plaintiff's settlements with the settling carriers so as . . . to insure that all underlying coverage has been properly exhausted. [This] contention has [no] merit. . . . As long as the [underlying] liability exceeds the primary limits in a vertical exhaustion, it does not matter how much the primary paid plaintiff[]. . . . plaintiff[] will have to pay that difference before expecting to obtain any reimbursement from excess insurance companies. . . . [and] the excess carrier is entitled to a credit for the full amount of [underlying coverage]. . . . This credit has nothing to do with the details of the settlements between UMC and the other insurers. Therefore, an excess carrier has no need to know the terms of the settlement between plaintiff and a settling primary carrier.

*Id.* at 69. Thus, applicable New Jersey law provides yet another, additional reason that Pfizer's confidential settlement agreements are not relevant to Defendants' exhaustion defense.

### D. The Deleterious Effects of Producing the Settlement Agreements Outweigh The Lack of Any Strong Need as Demonstrated Above

While Defendants claim that their need for Pfizer's settlement agreements "clearly outweighs any 'effects that may flow from their discovery'" (Defs. Ltr. at 6), a decision ordering the disclosure of the agreements under the facts here will have a chilling effect on settlement in this case and others. Pfizer has been and in the future likely will be in settlement negotiations with Defendants on the same claims as those that were settled with the underlying insurers. Allowing Defendants access to the terms of the negotiated agreements between Pfizer and its other insurers would severely prejudice Pfizer's position in those negotiations. Indeed, that is the reason that the settlement agreements include a confidentiality provision in the first place. *See, e.g.*, *UMC*, 276 N.J. Super. at 71 (under N.J.R.E. 408, same as F.R.E. 408, confidentiality was a "key component" to settlement negotiations, and holding that "ordering disclosure of settlements already reached in this case [with the other insurers] would . . . chill and deter other parties from entering into confidential discussions to settle their disputes without a lengthy trial."). There is no precedent for conferring such a benefit on Defendants, especially in light of the lack of necessity of the settlement agreements to prove facts relevant to their exhaustion arguments.

### III. CONCLUSION

For the reasons stated above, the Court should deny Defendants' request for copies of confidential settlement agreements between Pfizer and non-party insurers.

---

Pharmacia and Arch were located in New Jersey when the Policies were issued, *Garber* was litigated in New Jersey, and Defendants' Policies incorporate New Jersey endorsements.

Respectfully submitted,

By: s/ Robin L. Cohen
MCKOOL SMITH, P.C.
Robin L. Cohen (NJ Attorney ID No. 030501986)
Adam S. Ziffer (admitted *pro hac vice*)
Marc T. Ladd (admitted *pro hac vice*)
Denise N. Yasinow (NJ Attorney ID No. 148032015)
One Bryant Park, 47th Floor
New York, NY 10036
Tel: (212) 402-9400

*Attorneys for Plaintiff Pharmacia Corporation n/k/a Pfizer Inc.*

# EXHIBIT A

# CONFIDENTIAL
# FILED UNDER SEAL

# **EXHIBIT B**



June 27, 2018

R. Douglas Noah, Jr.
(214) 698-8088 (direct)
doug.noah@wilsonelser.com (Email)

**Via E-Mail** aziffer@McKoolSmith.com
Adam S. Ziffer
McKool Smith
One Bryant Park
47th Floor
New York, NY 10036

Re:  Insured:   Pharmacia Corp. n/k/a Pfizer, Inc.
     Policy:   Excess Directors and Officers Insurance and Company Reimbursement Policy No. C000875 for the Policy Period from 1 September 2002 to 1 September 2003 (the "Policy")
     Lawsuit:   *Garber v. Pharmacia Corp., et al.,* Civil Action No. 03-cv1519 (D.N.J.) (later consolidated and captioned *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.,* Civil Action No. 03-cv-1519 (D.N.J.)) (the "*Garber* Action")
     Claim No.:   C000875-002

Dear Mr. Ziffer:

As you know, I represented Allied World Assurance Company Ltd ("Allied World") with respect to the dispute between it and Pfizer, Inc. ("Pfizer") in which Pfizer sought coverage under the referenced Policy for the *Garber* Action. That dispute was resolved by confidential settlement in March of 2015. By letter dated June 9, 2018, you notified Allied World that defendants in the case styled *Pharmacia Corp. n/k/a Pfizer Inc. v. Arch Specialty Insurance Co., et al.,* No. 2:18-cv-00510-ES-MAH (D.N.J.)(the "Coverage Lawsuit") are seeking to compel Pfizer to produce a copy of the confidential settlement to them for use in that litigation.

It was a condition to the confidential settlement that the settlement terms and negotiations would remain confidential. However, in order to avoid the type of request now at issue here, it was agreed that Pfizer could disclose to certain of its excess insurers – which includes the insurers seeking this production – that Allied World was paying its full limits of liability under the referenced Policy. We understand from you that this has been communicated to the insurers seeking the settlement agreement. It was also agreed that that the confidential settlement would not be offered or received in evidence in any proceeding. Allied World therefore objects to Pfizer's production in the Coverage Lawsuit or any other proceeding of any further information beyond the disclosure allowed by the agreement and to the production of the confidential written

Bank of America Plaza, 901 Main Street, Suite 4800 • Dallas, TX 75202 • p 214.698.8000 • f 214.698.1101

Albany • Baltimore • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Virginia • Washington, DC • West Palm Beach • White Plains

wilsonelser.com

4194628v.2
4199910v.4

settlement agreement.  Furthermore, it is Allied World's position that the settlement agreement requires that Pfizer challenge all efforts to obtain production from it of the confidential settlement and information therein to the fullest extent of applicable law, and Allied World expects Pfizer to comply fully with this obligation.

Court rulings that prohibit discovery of settlement negotiations should be applicable here. They are founded on "the social goal of encouraging settlement and recognize[] that unhampered free communication is necessary in order to effectuate that goal." *Czuj v. Toresco Enterprises,* 239 N.J. Super. 123, 570 A.2d 1049 (1989).  Public policy favors settlement of litigation, and settlements are generally deemed confidential and inadmissible because they lack relevance and to encourage settlements. *UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.,* 276 N.J. Super. 52, 647 A.2d 182 (1994).

We have reviewed a copy of the brief that is to be filed by Pfizer in the Coverage Lawsuit objecting to production of the confidential settlement. Apart from the discussion in section II.C., which appears to be your additional argument why the settlement agreement should not be produced, Allied World agrees with Pfizer's arguments and authorities.  The confidential settlement agreement is neither relevant nor discoverable in the Coverage Lawsuit, and your production of the information reflecting Allied World's wire transfer to Pfizer of the full Policy limits for the *Garber* Action alone should provide the best evidence of the factors relevant to exhaustion.

This communication is provided without waiver of Allied World's rights under the subject Confidential Settlement Agreement and the Policy. Allied World is a Bermuda company and does not conduct business in the United States and this communication should not be construed by Pfizer as evidencing that Allied World is subject to the jurisdiction of any United States federal court, or any court of any state, territory or jurisdiction of the United States.

Best Regards,

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP

R. Douglas Noah, Jr.