

**Andrew I. Hamelsky**

The Legal Center | One Riverfront Plaza | 1037 Raymond Boulevard, Suite 230 | Newark, NJ 07102-5425
Direct 201.368.7206 | Fax 201.368.7246
hamelskya@whiteandwilliams.com | whiteandwilliams.com

September 26, 2018

<u>VIA ECF</u>

Honorable Michael A. Hammer
United States Magistrate Judge, District of New Jersey
Martin Luther King Building & Courthouse
50 Walnut Street
Newark, NJ 07101

**RE:** *Pharmacia Corp. n/k/a Pfizer Inc. v. Arch Specialty Ins. Co. et al.*, No. 2:18-cv-00510-ES-MAH (D.N.J.)

Dear Judge Hammer:

Arch Specialty Insurance Company ("Arch") respectfully submits this letter in opposition to Plaintiff's September 19, 2018 letter motion for an order compelling Arch to produce documents in response to certain of Plaintiff's First Set of Requests for Production of Documents (the "Motion to Compel") (Dkt. No. 63).

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery is limited to non-privileged matters that are relevant and reasonably calculated to lead to the discovery of admissible evidence. <u>See</u> Fed. R. Civ. P. 26(b)(1). "[T]he burden remains on the party seeking discovery to show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." <u>See</u> <u>IQVIA, Inc. v. Veeva Sys.</u>, 2018 U.S. Dist. LEXIS 156981, at *3 (D.N.J. 2018) (internal quotations omitted).

This Circuit recognizes that "[d]iscovery is not a fishing expedition," "not unlimited" and "may be circumscribed." <u>See</u> <u>Arena v. River Source Life Ins. Co.</u>, 2017 U.S. Dist. LEXIS 209443,

Honorable Michael A. Hammer
September 26, 2018
Page 2

at *2 (D.N.J. 2017); see also Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). Pursuant to Rule 26(b)(2)(C)(3), "the court must limit the … extent of discovery otherwise allowed by these rules … if it determines that … the burden [] of the proposed discovery outweighs the likely benefit." See Fed. R. Civ. P. 26((b)(2)(C)(3). Moreover, parties are not required to produce privileged or confidential and proprietary information. See Terrell v. Schweitzer-Mauduit Int'l, Inc., 352 N.J. Super. 109, 116 (N.J. App. Div. 2002); Dobson v. Twin City Fire Ins. Co., 2011 U.S. Dist. LEXIS 144394 (D. Cal. 2011) (sustaining insurer's confidentiality objection to disclosure of, among other things, reserves information, on grounds that it is "trade secret or other confidential research, development, or commercial information" under Rule 26(c)(1)(G), the disclosure of which would be harmful to the insurer).

Arch has already produced to Plaintiff a substantial volume of documents, including the Arch Policy and responsive, non-privileged documents from its Claims File. Arch also agreed to provide Plaintiffs with a list of names of the individuals that were responsible for underwriting the Arch Policy and handling the Garber claim. The remainder of Plaintiff's discovery requests are simply not relevant to this coverage action and not calculated to lead to the discovery of admissible evidence, unduly burdensome, and/or seek confidential or proprietary information. In fact, Plaintiff does not even assert that the outstanding discovery requests are relevant, but merely that the discovery sought is "potentially relevant." See Motion to Compel, p. 3. That is not the standard, but in any event, the objectionable requests are not even "potentially relevant." In addition, the requests are objectionable because it would be unduly burdensome to require Arch to search for the requested sixteen year old documents. Moreover, a number of the requests seek confidential or proprietary information, and are therefore not discoverable.

Accordingly, Arch respectfully requests that the Court deny, in full, Plaintiff's Motion to Compel.

### A.  Arch's Underwriting Materials Are Not Discoverable

The Court should deny Plaintiff's requests for the production of Arch's underwriting-related documents, including: (1) Underwriting Files (Req. No. 6); (2) drafting history (Req. Nos. 16-19); and (3) underwriting manuals (Req. No. 9) (together, the "Underwriting Materials"), because such documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, confidential and proprietary, and burdensome to produce.

First, Arch's Underwriting Materials are irrelevant to this coverage dispute.  Plaintiff purportedly seeks Arch's Underwriting Materials to rebut Arch's defenses based on the Pending or Prior Litigation Exclusion,[1] the Prior Knowledge Exclusion in the Warranty Statement,[2] and

---

[1] Endorsement No 1 in the Arch Policy provides:

> The **Excess Insurer** shall not be liable to make any payment in connection with a **Claim** arising out of, based upon or attributable to:
>
> a. Any litigation . . . against any **Insured** occurring prior to, or pending as of, September 1, 2002;
>
> b. Any subsequent litigation . . . against any **Insured** arising from or based on any matters alleged in such prior or pending litigation . . .; or
>
> c. Any **Wrongful Act** which gave rise to such prior or pending litigation . . . against any **Insured**, or any other **Wrongful Act**, whenever occurring, which, together with a **Wrongful Act** described above, constitute **Interrelated Wrongful Acts**.

[2] In an August 29, 2002 letter, signed by Pharmacia's Chief Executive Officer and Chief Financial Officer provides:

> No person for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance that may give rise to a claim that may fall within the scope of the proposed insurance.

In providing this Warranty Statement, Pharmacia also provided:

> It is agreed that any claim based upon, arising from, or in an way related to any act, error, omission, facto or circumstance of which any such person has knowledge or information will be excluded from coverage under the proposed insurance.

Honorable Michael A. Hammer
September 26, 2018
Page 4

whether the underlying policies were properly exhausted.[3]  However, none of these coverage defenses turns on Arch's internal underwriting analyses—indeed, they all turn on information available to Plaintiff, and not information in Arch's Underwriting Materials:

(1) The Pending or Prior Litigation Exclusion turns on whether, as a matter of law, the Garber Action and the Consumer Actions share any common fact, circumstance or situation (i.e., a comparison of the allegations found in each of the complaints).  See, e.g., Weaver v. Axis Surplus Ins. Co., No. 13-CV-7374 (SJF)(ARL), 2014 U.S. Dist. LEXIS 154746, at *39-40 (E.D.N.Y. Oct. 30, 2014).

(2) The Prior Knowledge Exclusion turns on whether a reasonable person in Plaintiff's position could foresee that the known facts might be the basis for a future claim at the time it signed the Warranty Statement (i.e., a determination of what information was available to Plaintiff at the time the Warranty Statement was signed).  See, e.g., Quanta Lines Ins. Co. v. Inv'rs Capital Corp., No. 06 CIV. 4624 (PKL), 2009 WL 4884096, at *17 (S.D.N.Y. Dec. 17, 2009), aff'd, 403 F. App'x 530 (2d Cir. 2010).

(3) The exhaustion issue turns on whether Plaintiff settled with any of the underlying insurers in consideration for releases of claims other than Garber, or in exchange for accommodations under other policies (i.e., a review of the settlement agreements between Plaintiff and the underlying insurers).  See, e.g., JP Morgan Chase & Co. v. Indian Harbor Ins. Co., 20 N.Y.3d 858 98 A.D.3d 18 (App. Div. 1st Dept. 2012).

---

[3] The Arch Policy's Insuring Agreement in Section I.B provides:

> The insurance coverage afforded by this Policy shall apply only after exhaustion of the **Underlying Limit** solely as a result of actual payment, in legal currency, under the **Underlying Insurance** in connection with **Claim(s)** and after the **Insureds** shall have paid the full amount of any applicable deductible or self-insured retentions.

Honorable Michael A. Hammer
September 26, 2018
Page 5

Moreover, contrary to Plaintiff's representations, policy ambiguity is <u>not</u> an issue here.[4] In fact, in opposition to Arch's Motion to Dismiss, Plaintiff did not contend that Arch's Pending or Prior Litigation Exclusion or Prior Knowledge Exclusion (the only policy terms at issue in that motion) are ambiguous. (Dkt. No. 45). Rather, Plaintiff recognized the plain language of the exclusions and argued that: (1) the Garber claim was not precluded by Arch's Pending and Prior Litigation Exclusion under either New York or New Jersey's test for the exclusion; and (2) Arch did not show that Pharmacia's executives had subjective knowledge of facts or circumstances that may give rise to a claim. This coverage dispute concerns applying the plain meaning of the Arch Policy to the facts—not whether the Arch Policy is ambiguous.[5]

Plaintiff fails to cite any cases law requiring the production of such Underwriting Materials in the absence of allegations of ambiguity or bad faith. Rather, Plaintiff improperly relies on cases requiring the production of such Underwriting Materials under wholly different circumstances— where courts are asked to determine whether policy language is ambiguous, or whether an insurer acted in bad faith. Such cases have no bearing here, because there are no allegations that the Arch Policy is ambiguous or that Arch acted in bad faith.

Rather, federal courts—applying the same Federal Rules of Civil Procedure that are applicable here—have repeatedly held that such Underwriting Materials are not discoverable in the absence of allegations of policy ambiguity or insurer bad faith. <u>See</u>, <u>e.g.</u>, <u>Koster v. Landmark Am. Ins. Co.</u>, 2016 U.S. Dist. LEXIS 66656 (M.D. Fla. 2016); <u>see also</u> <u>Milinazzo v. State Farm</u>

---

[4] Indeed, Plaintiff does not even identify specific terms in the Arch Policy it considers ambiguous.

[5] In any event, "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." <u>See</u> <u>Oxford Realty Group Cedar v. Travelers Excess & Surplus Lines Co.</u>, 229 N.J. 196, 207 (N.J. 2017).

21521942v.2

Ins. Co., 247 F.R.D. 641, 702-3 (S.D. Fla. 2007) (stating that in order to obtain discovery into an underwriting file in a breach of contract action, the movant must allege an underwriting issue or "make a prima facie showing that material provisions of the policy are ambiguous"); Westfield Ins. Co. v. Icon Legacy Custom Modular Homes, 321 F.R.D. 107 (M.D. Pa. 2017) (denying discovery of extrinsic evidence in a coverage dispute because movant failed, *inter alia*, to point to specific language in the policy that is genuinely ambiguous); Westchester Fire Ins. Co. v. Household Int'l, Inc., 167 Fed. Appx. 895 (3d Cir. 2006) (applying New Jersey law and denying policyholder's motion to compel discovery of information regarding the intent and drafting of the policy exclusion); Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC, 2010 U.S. Dist. LEXIS 142870 (E.D. Va. 2010) (rejecting discovery of policy drafting history and all other extrinsic evidence in the absence of a material ambiguity on the face of the policy); Royal Bahamian Ass'n, Inc. v. QBE Ins. Co., 268 F.R.D. 692, 694-95 (S.D. Fla. 2010) (finding that the standard operating procedures and underwriting guidelines were irrelevant to an insurance breach of contract claim, as opposed to a bad faith claim).

As noted above, all of the cases cited by Plaintiff are inapposite. In Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101 (D.N.J. 1990), the plaintiff alleged ambiguity, and the court determined that the resolution of the coverage dispute required interpretation of the policy terms "sudden occurrence" and "property damage." Likewise, in Leksi, Inc. v. Fed. Ins. Co., 129 F.R.D. 99 (D.N.J. 1989), the court noted that "[t]he central issue in this case concerns the interpretation of the language of the insurance policies provided to [the plaintiff] by the defendants." Finally, while Diebold, Inc. v. Cont'l Cas. Co., 2009 U.S. Dist. LEXIS 140208 (D.N.J. 2009) provides no context for its discovery ruling, the Third Circuit's affirmation of the district court's later grant of

summary judgment to the insurer makes clear that the coverage dispute centered on the interpretation of the policy's definition of "Risk Management Department." See Diebold Inc. v. Cont'l Cas. Co., 430 Fed. Appx. 201 (3d Cir. 2011).

Second, Arch's Underwriting Materials are confidential and proprietary. The protective order does not moot Arch's concerns regarding sharing its confidential and proprietary internal underwriting analyses with Plaintiff. See Dobson v. Twin City Fire Ins. Co., 2011 U.S. Dist. LEXIS 144394, at *9-11 (D. Cal. 2011) (sustaining insurer's confidentiality objection to disclosure of, among other things, reserves information, on grounds that it is "trade secret or other confidential research, development, or commercial information" under Rule 26(c)(1)(G), the disclosure of which would be harmful to the insurer, and noting that a protective order does not necessarily moot this concern).

Third, requiring Arch to search for sixteen year old underwriting guidelines, which may or may not have existed at the time, would be unduly burdensome. As such, any potential benefit from such documents is outweighed by the burden of the proposed discovery. See Fed. R. Civ. P. 26((b)(2)(C)(3).

Accordingly, the Court should deny Plaintiff's request to compel production of Arch's Underwriting Materials.

### B. Arch's Claims-Handling Guidelines Are Not Discoverable

The Court should deny Plaintiff's request for production of Arch's claims-handling guidelines (Req. No. 20), because any such guidelines are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, confidential and proprietary and would be unduly burdensome to search for and produce.

First, the request is not relevant or reasonably calculated to lead to the discovery of admissible evidence where, as here, Arch's claims handling practices are not at issue. While Plaintiff seeks Arch's claim-handling guidelines or manuals claiming they are relevant to whether the underlying policies have properly exhausted (discussed above at pg. 4 and fn. 3) and whether the Morabito and Garber Actions are "related" for purposes of the Pending or Prior Litigation and Prior Knowledge Exclusions (discussed above at pg. 4 and fns. 1-2), Plaintiff does not cite any case law in support of this position. Rather, the available case law provides that claim-handling guidelines or manuals are not relevant in a coverage action, such as this one, which does not allege bad faith. See Kennedy v. Provident Life & Accident Ins. Co., 2009 U.S. Dist. LEXIS 93387, at *5 (S.D. Fla. 2009) ("documents . . . regarding the insurer's claims handling or general business practices are irrelevant to the issue of whether the insured is entitled to the coverage claimed and may only be relevant to a claim of bad faith").

Second, any claims-handling guidelines or manuals would contain confidential and proprietary information. The existence of a protective order does not moot Arch's concerns. See Dobson, 2011 U.S. Dist. LEXIS 144394, at *9-11.

Third, requiring Arch to search for sixteen year old claims-handling guidelines, which may or may not have existed at the time, would be unduly burdensome. As such, any potential benefit from such documents is outweighed by the burden of the proposed discovery. See Fed. R. Civ. P. 26((b)(2)(C)(3).

Accordingly, the Court should deny Plaintiff's request to compel production of Arch's claims-handling guidelines.

Honorable Michael A. Hammer
September 26, 2018
Page 9

### C. Arch's Organizational Documents Are Not Discoverable

The Court should deny Plaintiff's request for production of Arch's organizational documents (Req. No. 8), because any such documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and would be unduly burdensome to search for and produce.

In support of its request, Plaintiff cites a single Colorado case, purportedly holding that an organizational chart of an insurer's claims department is relevant to a breach of contract claim. However, Plaintiff misrepresents the holding in Cunningham v. Standard Fire Ins. Co., 2008 U.S. Dist. LEXIS 56659 (D. Col. 2008). In Cunningham, the plaintiff sought discovery of organization charts to "frame questions in deposition" in connection with its bad faith claim. Here, Plaintiff does not allege Arch engaged in bad faith, and therefore this case does not provide support for Plaintiff's discovery request. Arch is not aware of any other cases providing support for such a request in the absence of a claim for bad faith. In any event, Arch has agreed to provide a list of names of those individuals that were responsible for underwriting the Arch Policy and handling the Garber claim. That will assist Plaintiff in preparing for depositions in this matter.

Moreover, requiring Arch to search for sixteen year old organizational charts, which may or may not exist, would be unduly burdensome. As such, any potential benefit from such documents is outweighed by the burden of the proposed discovery. See Fed. R. Civ. P. 26((b)(2)(C)(3).

Accordingly, the Court should deny Plaintiff's request to compel production of Arch's organizational documents.

Honorable Michael A. Hammer
September 26, 2018
Page 10

                          Respectfully submitted,

                          WHITE AND WILLIAMS LLP

                          Andrew I. Hamelsky
                          Erica Kerstein (*pro hac vice*)

cc:      All counsel of record (via ECF)

21521942v.2